2012 COA 90

**The PEOPLE of the State of Colorado,**
**Plaintiff–Appellee,**

**v.**

**Christopher Lawrence ROWE,**
**Defendant–Appellant.**

**No. 09CA0246.**

Colorado Court of Appeals,
Div. VII.

June 7, 2012.

Rehearing Denied July 19, 2012.

John W. Suthers, Attorney General, Katharine J. Gillespie, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee.

Douglas K. Wilson, Colorado State Public Defender, Stephen C. Arvin, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant.

Opinion by Judge ROMÁN.

¶ 1 Defendant, Christopher Lawrence Rowe, appeals the judgment of conviction entered on a jury verdict finding him guilty of sexual exploitation of a child. We affirm.

## I. Background

¶ 2 On December 11, 2006, defendant was completing his sex offender registration requirement when he asked a deputy sheriff whether the officers visited offenders' homes and, if so, whether the officers would look at his computer. Defendant stated, "[I]f there is [child pornography] on my PC, I didn't put it there.... I think my roommates have been jacking with my computer."

¶ 3 Based on that statement, detectives went to defendant's home on December 26, 2006, to verify his address and also to request defendant's consent to search his computers. Defendant directed the detectives to the "My Documents" folder on his laptop where they located sexually explicit photographs of children. The detectives seized defendant's laptop, desktop computer, and other file storage media. A forensic examination of the computers revealed pictures and videos depicting child pornography.

¶ 4 Defendant was charged with one count of sexual exploitation of a child pursuant to section 18–6–403(3)(b), C.R.S.2011, and nine counts of sexual exploitation of a child (pos-session) pursuant to section 18–6–403(3)(b.5), C.R.S.2011. He was convicted on all counts and sentenced to six years in prison followed by eighteen months of sex offender probation.

¶ 5 Trial evidence established that defendant had two peer-to-peer file sharing programs on his computer. One program, LimeWire, used a "shared" folder to store files that could be accessed and downloaded by other LimeWire users. A detective qualified as a LimeWire expert testified that LimeWire is a peer-to-peer sharing program where files are not stored on a central server. Instead, individual LimeWire users utilize key-word searches to locate files found on other LimeWire users' computers. Each LimeWire user designates which folders and files can be searchable by other LimeWire users.

¶ 6 On appeal, defendant contends the evidence is insufficient to sustain his conviction under section 18–6–403(3)(b) because his actions were not proscribed by the conduct listed in the statute. He also claims error in statements made by the prosecutor in closing argument and other acts evidence admitted pursuant to CRE 404(b).

## II. Sufficiency of the Evidence

¶ 7 Defendant contends the trial evidence was insufficient to prove that he committed sexual exploitation of a child. We conclude that sufficient evidence exists to prove defendant knowingly stored files containing sexually exploitative material in a shared folder on a peer-to-peer sharing network and that such conduct constitutes an offer of sexually exploitative material proscribed by section 18–6–403(3)(b).

¶ 8 We review questions relating to the sufficiency of the evidence de novo. *Oram v. People,* 255 P.3d 1032, 1038 (Colo.2011). In so doing, we consider "whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt." *Clark v. People,* 232 P.3d 1287, 1291 (Colo. 2010) (quoting *People v. Bennett,* 183 Colo.

125, 130, 515 P.2d 466, 469 (1973)). Evidence is sufficient if "a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Clark,* 232 P.3d at 1291.

## A. Offers

¶ 9 To determine whether the evidence is sufficient to support defendant's conviction, we first analyze, as a matter of first impression in Colorado, whether defendant's conduct of saving sexually exploitative material in a shared folder is proscribed by the term "offers" in the sexual exploitation statute, section 18–6–403(3)(b). We conclude that it is.

¶ 10 Statutory interpretation is a question of law that we review de novo. *Bostelman v. People,* 162 P.3d 686, 689 (Colo.2007). When interpreting a statute, our task is to determine and give effect to the legislature's intent by first examining the plain and ordinary meaning of the statutory language. *People v. Madden,* 111 P.3d 452, 457 (Colo. 2005). We must read the words of a statute in context and construe them according to their common usage. § 2–4–101, C.R.S.2011. When the statutory language is clear and unambiguous, we apply the provision as written and do not engage in further statutory analysis. *Bostelman,* 162 P.3d at 690.

¶ 11 As pertinent here, "[a] person commits sexual exploitation of a child if, for any purpose, he or she knowingly . . . [p]repares, arranges for, publishes, . . . produces, promotes, makes, sells, finances, offers, exhibits, advertises, deals in, or distributes . . . any sexually exploitative material." § 18–6–403(3)(b).

¶ 12 The term "offer" is not defined by the statute. The commonly understood meaning of the term "offer" is "to make available or accessible" and "to present for acceptance or rejection." *Webster's Third New International Dictionary* 1566 (2002). Another jurisdiction has analyzed "offer" in the context of peer-to-peer file sharing and defined the term as "the act by which one person makes known to another that he or she may have for the taking an item possessed by the offeror." *State v. Lyons,* 417 N.J.Super. 251, 9 A.3d 596, 601 (N.J.Super.Ct.App.Div.2010).

¶ 13 Reading the plain language of the statute and construing the term "offer" according to its common usage, we hold that a defendant "offers" sexually exploitative material by making it available or accessible to others. In the context of a peer-to-peer file sharing network, a defendant offers sexually exploitative material by knowingly leaving it in the share folder for other users to download. *See United States v. Sewell,* 513 F.3d 820, 822 (8th Cir.2008) ("In the context of [a peer-to-peer sharing] program, placing a file in a shared folder with descriptive text is clearly an offer to distribute the file."); *see also United States v. Lewis,* 554 F.3d 208, 211 (1st Cir.2009) ("any file a user downloads through LimeWire is automatically placed in that 'Shared' folder and is therefore offered by that user for further downloads by other users").

¶ 14 Because the term "offers" is unambiguous, we need not resort to other aids of statutory construction, including the legislative declaration. *See* § 2–4–203, C.R.S.2011; *Bostelman,* 162 P.3d at 690.

## B. Application

¶ 15 Defendant concedes there was evidence that he knew both sexually exploitative material and LimeWire were present on the laptop. Trial evidence also supports the conclusion that he knew the sexually exploitative material was located in a folder available for others to download.

¶ 16 Defendant did not testify at trial. However, several of defendant's statements were admitted through detectives' testimony. One detective testified that when asked whether the officers should know anything about his computer, defendant responded that there was Anime and inappropriately named files that he shared in the "My Documents" folder. The detective also testified that defendant stated the files were placed on his computer either by LimeWire or by his ex-roommate. However, when initially asked whether other people had control of his computers, defendant responded that the only other person was his ex-roommate, who had been in custody for some time.

¶ 17 In a later phone conversation with a second detective, defendant inquired about the possibility of retrieving his property. The detective explained that he could not return any property containing sexually explicit material. Defendant responded that the questionable material was located on the laptop but the desktop computer was "clean." This was significant because the shared images were located on defendant's laptop, and defendant's response demonstrated his knowledge of this fact.

¶ 18 In response to the prosecutor's questions regarding her investigation of defendant's ex-roommate, the detective testified to the strength of the case against defendant. She stated, "I already have [defendant] telling me that he not only knew those images were there, he directed [the other detective] exactly where those images were located on his file." The detective also alluded to a statement defendant made about sanitizing his computer. She explained that if defendant removed the files through a sanitizing program, he would have directed the detectives to his trash bin rather than to the shared folder. From this testimony, the jury could reasonably infer that defendant knew illegal files were located in a folder accessible to other LimeWire users.

¶ 19 The detective also testified that the ex-roommate was not a viable suspect because he was in jail and did not have access to the laptop at the time the images were downloaded. Additionally, she testified that the wireless network was secured, meaning that a user located outside of the house could not have downloaded the images to defendant's computer.

¶ 20 Finally, the computer forensics detective testified regarding the names of the files. The file names included sexually explicit terminology, as well as young ages and terms to describe youth.

¶ 21 Under these circumstances, and viewed in the light most favorable to the prosecution, the evidence is sufficient to support a conclusion by a reasonable mind that defendant knew sexually exploitative material was available for other LimeWire users to download from his computer. *See Clark*, 232 P.3d at 1291; *see also State v. Tremaine*, 315 S.W.3d 769, 772 (Mo.Ct.App.2010) (evidence was sufficient for the jury to find that the defendant offered to disseminate child pornography in the sense that he presented for acceptance or rejection, held out, and made available, such materials for widespread sharing via the computer, and invited others to take, or download, those items from him); *cf. United States v. Shaffer*, 472 F.3d 1219, 1223 (10th Cir.2007) (in analyzing the term "distributed" the Tenth Circuit explained that the defendant may not have "actively pushed pornography" on other peer-to-peer users, but "he freely allowed them access to his computerized stash of images and videos and openly invited them to take, or download, those items," and therefore, distributed those images).

¶ 22 Consequently, the evidence is sufficient to support the verdict that defendant is guilty of sexual exploitation of a child under the theory that he knowingly offered sexually exploitative material to other LimeWire users.

### III. Alternative Theories of Liability

¶ 23 Defendant claims error in the trial court's instructing the jury on other theories of liability listed in the sexual exploitation statute. Because we conclude the evidence is sufficient to support one theory of liability, offers, we perceive no error in the submission of other theories of liability to the jury, and do not address the remaining theories of liability.

¶ 24 Due process does not require that sufficient evidence support each of multiple alternative theories of liability. *People v. Dunaway*, 88 P.3d 619, 629 (Colo.2004). Rather, "as long as the evidence supports one of the theories of liability beyond a reasonable doubt, [the defendant's] trial was not fundamentally unfair." *Id.* at 624, 629.

¶ 25 Here, the jury was instructed as to each alternative theory of liability (prepares, arranges for, produces, promotes, makes, sells, finances, offers, exhibits, advertises, deals in, or distributes) delineated in section 18-6-403(3)(b).

¶ 26 In *People v. Mantos,* 250 P.3d 586, 590 (Colo.App.2009), another division of this court concluded that a defendant's conduct of downloading and saving already-existing material in a share-capable computer file is not proscribed by the term "prepares" in section 18–6–403(3)(b). The division also concluded that such conduct is not proscribed by the term "arranges for." *Id.* at 591. However, the prosecutor in that case never argued that the defendant published, promoted, sold, financed, offered, exhibited, advertised, dealt in, or distributed the material. *Id.* at 592.

¶ 27 Here, in contrast, the prosecutor focused on two alternative theories of liability not analyzed in *Mantos:* offering and promoting. Because we conclude the evidence provides a sufficient factual basis to support his conviction under the theory that he offered sexually exploitative material, we find no error even though other theories argued by the prosecution may not be supported by sufficient evidence. *See People v. Gallegos,* 260 P.3d 15, 23 (Colo.App.2010) (finding a sufficient factual basis for the defendant's conviction under one of alternative theories and distinguishing *Mantos,* where there were no legally sufficient bases for conviction).

¶ 28 Consequently, we reject defendant's assertion that his conviction must be reversed because the trial court allowed the charge to go to the jury on alternative theories that were not supported by sufficient evidence. "While ... the better practice is for the court to remove from the instruction a theory of liability that is not supported by sufficient evidence, the fact that the court fails to do so 'does not provide an independent basis for reversing an otherwise valid conviction.'" *Dunaway,* 88 P.3d at 629 (quoting *Griffin v. United States,* 502 U.S. 46, 60, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991)).

### IV. Prosecutorial Misconduct

¶ 29 Defendant also argues that reversal is required because the prosecutor's remarks in closing argument improperly stated the law. We disagree.

¶ 30 Where, as here, no trial objection was lodged to asserted prosecutorial misconduct, we review for plain error. *Peo-*

ple *v. Beilke,* 232 P.3d 146, 154 (Colo.App. 2009). Prosecutorial misconduct in closing argument rarely constitutes plain error. *Liggett v. People,* 135 P.3d 725, 735 (Colo. 2006). "Prosecutorial misconduct constitutes plain error only when it is flagrant, glaringly, or egregiously improper." *Beilke,* 232 P.3d at 154.

¶ 31 It is improper for counsel to misstate or misinterpret the law during closing argument. *People v. Rodriguez,* 794 P.2d 965, 977 (Colo.1990); *Beilke,* 232 P.3d at 154.

¶ 32 During closing arguments, the prosecutor made the following statements:

- I have to show [defendant] knowingly had those files in his share folder, knowingly published them, and knowingly possessed them.

- What I have to show is that the Defendant, in the State of Colorado, knowingly prepared, arranged for, published, produced, promoted, made, sold, financed, a whole bunch of different things.

- Promote. Promote means to promote the existence of. Means to manufacture, sell, provide, lend, mail, deliver, transfer, transmit, publish, distribute, disseminate or offer to do any of those things.

- All I have to show is that he promoted the existence of these files or published these files. To the extent that transmitting a file equals promotion, at the point this Defendant downloads to his computer, causing those files to be transmitted from one place to another, where there was once one copy of a file, there are now two, the original and the one the Defendant has promoted the existence of those files. [sic]

- More than that, he has offered those files to others. He keeps them in the directory that could be shared by anyone; anyone wanting to get the files could. Anyone wanting to search for them and download them had a free pass from the Defendant's computer.

In rebuttal closing, the prosecutor stated:

- All I have to do is what the jury instructions say I have to do. I have to

show that the files are transmitted, downloaded. I have to show they were offered to be published.

- What is LimeWire but an offering of files? It is a community that substantiates itself on people offering files to each other. That is what [the computer forensics detective] tells you. People offering files to each other.

¶ 33 Read in context, the prosecutor's remarks stressed that defendant offered the files as well as promoted them. Because we have concluded that the evidence is sufficient to prove that defendant offered sexually exploitative material, we likewise conclude that any of the prosecutor's above statements regarding the term "promotes" did not materially contribute to his conviction. Therefore we perceive no plain error. *See Beilke*, 232 P.3d at 155 (no plain error where single misstatement was not flagrant or glaringly improper, the jury received an instruction that properly stated the law, and the incident appears to have been isolated); *People v. Grant*, 174 P.3d 798, 811 (Colo.App.2007) (prosecutor's brief reference in argument to the improper definition of "after deliberation" did not constitute plain error because the remark did not materially contribute to defendant's conviction).

### V. Other Acts Evidence

¶ 34 Defendant next contends the trial court erred in admitting other acts evidence under CRE 404(b) and as res gestae. Because we conclude the trial court did not abuse its discretion in admitting the evidence under Rule 404(b), we do not address defendant's arguments that the evidence was inadmissible as res gestae.

### A. Legal Standards

¶ 35 "Trial courts are accorded substantial discretion when deciding whether to admit evidence of other acts." *Yusem v. People*, 210 P.3d 458, 463 (Colo.2009). "We review a trial court's decision in this area for abuse of discretion and will only disturb that ruling on appeal if it was manifestly arbitrary, unreasonable, or unfair." *Id.*

¶ 36 CRE 404(b) provides in pertinent part, "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." However, "in the prosecution of sexual offenses ... there is a greater need and propriety for consideration by the fact finder of evidence of other relevant acts of the accused, including any actions, crimes, wrongs, or transactions." § 16–10–301(1), C.R.S.2011; *see People v. McKibben*, 862 P.2d 991, 992 (Colo.App.1993).

¶ 37 Before the court admits evidence of other crimes, wrongs, or acts, the evidence must satisfy CRE 404(b) and the test in *People v. Spoto*, 795 P.2d 1314 (Colo. 1990). The court must assure that (1) the prior act relates to a material fact; (2) it is logically relevant in that it makes the existence of a material fact more or less probable than it would be without the evidence; (3) its logical relevance is independent of the prohibited intermediate inference that the defendant has a bad character; and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *People v. Rath*, 44 P.3d 1033, 1038 (Colo.2002); *Spoto*, 795 P.2d at 1318.

¶ 38 With respect to the fourth prong, the General Assembly has found that "such evidence of other sexual acts is typically relevant and highly probative, and it is expected that normally the probative value of such evidence will outweigh any danger of unfair prejudice." § 16–10–301(1).

### B. Evidence Admitted

¶ 39 Defendant challenges two separate types of evidence. One is evidence introduced through the testimony of a police officer involving a prior incident where defendant admitted to watching and enjoying child pornography. The officer testified:

Basically [defendant's] saying that when he was either around 16 or 17 years old, he discovered numerous pornographic sites on the Internet using his father's computer, and he further went on to say he visited these sites once or twice a week and returned to what he called or labeled some child porn sites.

¶ 40 The other is the admission of 100 images of animated child pornography found on his computer during the search in this case.

¶ 41 Prior to the admission of this evidence, the jury was instructed:

Ladies and gentlemen, you are about to hear testimony which has been admitted for a limited purpose. You may only consider the evidence for the following purposes: knowledge, intent, motive, lack of mistake, or common plan, scheme, or design. You are instructed that you cannot consider this evidence admitted for a purpose except for the limited purpose for which it is admitted.

### C. Prior Viewing of Child Pornography

¶ 42 Regarding the first prong, the prosecution articulated a precise purpose for the evidence: it combats and controverts any assertion that there was a mistake of fact. *See Yusem*, 210 P.3d at 463–64 (the prosecution is required to articulate "a precise evidential hypothesis by which a material fact can be permissibly inferred" (quoting *Spoto*, 795 P.2d at 1319)). Additionally, it rebuts testimony elicited by defense counsel that defendant said that he did not like child pornography, and the trial court found that the evidence was material to the issues of intent and motive.

¶ 43 Thus, under the second *Spoto* prong, evidence is logically relevant if it has any tendency to make the existence of a material fact more or less probable than it would be without the evidence. *Yusem*, 210 P.3d at 463; *see* CRE 401. Here, the evidence was logically relevant because it made it more probable that defendant knew the child pornography was on his computer and he received sexual gratification from viewing it, and it rebuts his statement that he did not like child pornography.

¶ 44 The third prong of the *Spoto* test does not demand the absence of the prohibited inference but only that the proffered evidence be logically relevant independent of that inference. *People v. Snyder*, 874 P.2d 1076, 1080 (Colo.1994). Here, the evidence was relevant independent of any prohibited inference because it refuted defendant's as-

sertion that he disliked child pornography and wanted it removed from his computer, and that it was placed on his computer by his ex-roommate.

¶ 45 Under the fourth prong, the trial court properly concluded that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. Although the evidence was unfavorable to defendant, that fact does not render the evidence "unfairly prejudicial," because it did not lead the jury to render its decision on an improper basis. *See McKibben*, 862 P.2d at 993; *see also* § 16–10–301(1) (in the prosecution of sexual offenses, the probative value of evidence of other sexual acts will normally outweigh any danger of unfair prejudice).

¶ 46 Additionally, the trial court instructed the jury that the evidence was admissible only for the specific purposes of showing defendant's knowledge, intent, motive, lack of mistake, or common plan, scheme, or design, and could not be considered for any other purpose. Absent evidence to the contrary, we must presume the jury followed the court's limiting instructions and did not rely on the evidence for an improper purpose. *See People v. Barnum*, 217 P.3d 908, 910 (Colo.App.2009).

¶ 47 Therefore, we perceive no abuse of the trial court's discretion in admitting the evidence of his prior viewing of child pornography.

### D. Animated Child Pornography

¶ 48 We likewise perceive no abuse of the trial court's discretion in admitting the animated child pornography.

¶ 49 Under the first *Spoto* prong, the trial court admitted the animated child pornography to show lack of mistake of fact, intent, and motive. The prosecutor asserted in part that the images were possessed for sexual gratification or arousal and also that the close proximity on his computer of the animated child pornography and the actual child pornography negated any assertion that he had no knowledge of the illegal files.

¶ 50 The animated child pornography is logically relevant in that it makes the exis-

tence of a material fact more or less probable than it would be without the evidence. Specifically, the possession of the pornography made it more probable that defendant committed the charged acts because it was located in the same area on his computer as the sexually exploitative material described in the information. Thus, the evidence made it more probable that he had knowledge of the sexually exploitative material. It also made it more probable that he was sexually aroused by children.

¶ 51 Likewise, the logical relevance of the evidence is independent of the prohibited intermediate inference that defendant has a bad character because it was used to rebut defendant's defense that the sexually exploitative material was planted on his computer by his ex-roommate.

¶ 52 The trial court also found that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice.

¶ 53 Finally, the jury heard testimony that possession of the animated child pornography was not illegal and the jury was instructed that it could only consider defendant's possession of the animated child pornography for the limited purposes of "knowledge, intent, motive, lack of mistake, or common plan, scheme, [or] design."

¶ 54 We are satisfied that the court conducted a proper *Spoto* analysis, and do not disturb this exercise of the trial court's discretion.

## VI. Cumulative Error

¶ 55 Because we perceive no individual errors, we reject defendant's contention that the cumulative effect of such errors deprived him of a fair trial. *See People v. Blackwell,* 251 P.3d 468, 477 (Colo.App.2010) (rejecting cumulative error argument after discerning no single error).

¶ 56 Judgment affirmed.

Judge RICHMAN and Judge MILLER concur.