2014 COA 94

**The PEOPLE of the State of Colorado,**
**Plaintiff–Appellee,**

v.

**Isaac K. ARYEE, Defendant–Appellant.**

**Court of Appeals No. 11CA2257**

Colorado Court of Appeals,
Div. V.

Announced July 31, 2014

---

\* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S.2013.

John W. Suthers, Attorney General, Jacob R. Lofgren, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee

Douglas K. Wilson, Colorado State Public Defender, Andrea R. Gammell, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant

Opinion by JUDGE ASHBY

¶ 1 Defendant, Isaac K. Aryee, appeals from the trial court's judgment entered on jury verdicts finding him guilty of various sexual assault charges. We affirm.

¶ 2 This case asks us to decide, apparently for the first time, what is required under section 20–1–107, C.R.S.2013, when a district attorney seeks her own disqualification. We conclude that the statute does not require the district attorney to make any showing. The filing of the motion seeking disqualification is all that is required.

## I. Background

¶ 3 Aryee was the pastor of a church he ran out of his home. The victim, K.W., and her family became friends with Aryee when they moved to Denver and began attending his church. K.W. sometimes babysat Aryee's children and helped with the housework.

¶ 4 In 2008, Aryee and K.W. engaged in sexual intercourse, which resulted in a child. Aryee claims the acts were consensual and only occurred three times. K.W. claims that Aryee forced himself on her nine or more times.

¶ 5 The People charged Aryee with one count of aggravated sexual assault on a child; one count of sexual assault on a child by one in a position of trust, victim under fifteen years old; two counts of sexual assault on a child by one in a position of trust, victim fifteen to eighteen years old; and one count of sexual assault on a child by one in a position of trust as part of a pattern of abuse. A jury found Aryee guilty as charged. The trial court sentenced him to an indeterminate term of thirty years to life in the custody of the Department of Corrections, plus lifetime parole.

## II. Disqualification of a District Attorney's Office

¶ 6 Aryee contends that the trial court erred by disqualifying the Adams County District Attorney's Office and appointing two Denver County District Attorneys as special prosecutors. We disagree.

¶ 7 We review the trial court's decision to disqualify a district attorney for an abuse of discretion. *See People v. Loper*, 241 P.3d 543, 546 (Colo.2010). The court abuses its discretion where its decision is manifestly arbitrary, unreasonable, or unfair, or is based on a misapprehension of the law. *Id.*; *People v. Chavez*, 190 P.3d 760, 765 (Colo. App.2007).

¶ 8 To resolve Aryee's contention, we must interpret section 20–1–107. We review an issue of statutory interpretation de novo. *A.S. v. People*, 2013 CO 63, ¶ 10, 312 P.3d 168; *People v. Perez*, 238 P.3d 665, 669 (Colo.2010). In doing so, our primary goal is to ascertain and give effect to the legislative intent. *Perez*, 238 P.3d at 669. We do this by first looking to the plain language of the statute, giving words and phrases their commonly understood meanings. *Id.* If the language is clear and unambiguous, we apply it as written. *Bostelman v. People*, 162 P.3d 686, 690 (Colo.2007). Only if that language is ambiguous do we turn to extrinsic aids of construction. *Id.*

¶ 9 As relevant here, section 20–1–107(2) provides:

> A district attorney may only be disqualified in a particular case at the request of the district attorney or upon a showing that the district attorney has a personal or financial interest or finds special circumstances that would render it unlikely that the defendant would receive a fair trial.... The motion shall not be granted unless requested by the district attorney or unless the court finds that the district attorney has a personal or financial interest or special circumstances exist that would render it unlikely that the defendant would receive a fair trial.

If the court disqualifies the district attorney, it should appoint a special prosecutor from a different judicial district to handle the case. *See* § 20–1–107(4).

¶ 10 In 2009, Aryee was charged by the Denver District Attorney's Office. Just over one year later, by agreement of the parties, the case was transferred to Adams County. In a written motion, the Adams County District Attorney's Office requested that the Denver District Attorney's Office be appointed as special prosecutors under section 20–1–107. After a hearing, the court granted the motion. The two district attorneys who had been responsible for the case in Denver County were appointed as special prosecutors in Adams County to continue prosecuting the case.

¶ 11 Aryee argues that the court should not have disqualified the Adams County District Attorney's Office because it did not show that it had an interest contrary to its duty to seek justice. We conclude, however, that under the plain language of the statute, no such showing is required.

¶ 12 Section 20–1–107 provides that a district attorney may be disqualified in one of three ways:

(1) at the request of the district attorney; or

(2) upon a showing that the district attorney has a personal or financial conflict of interest; or

(3) when the court finds there are special circumstances that would render it unlikely that the defendant would receive a fair trial.

*See People in Interest of N.R.*, 139 P.3d 671, 676 (Colo.2006). The first method is premised on a district attorney's own motion. The second and third methods are premised on the movant being a person or entity other than the district attorney. Thus, the statute provides different disqualification standards depending on who moves for the disqualification.

¶ 13 When a defendant moves to disqualify a district attorney, he must show that the conflict or special circumstance would render it unlikely that he would receive a fair trial. *See People v. C.V.*, 64 P.3d 272, 275–76 (Colo.2003) ("It is incumbent upon the defendant to present sufficient evidence to support a conclusion that he or she will be denied a fair trial if the prosecuting attorney is allowed to proceed with the prosecution."); *see also Perez*, 238 P.3d at 667 (the financial interest must affect the trial's fairness to justify disqualifying the district attorney); *N.R.*, 139 P.3d at 676 (the personal interest must affect the trial's fairness to justify disqualifying the district attorney).

¶ 14 The supreme court has held that such a showing is necessary because "defendants should not have 'the unfettered option of disqualifying a prosecutor whenever a district attorney [has] knowledge of any fact surrounding a case.'" *Loper*, 241 P.3d at 547–48 (quoting *C.V.*, 64 P.3d at 276–77; *see Perez*, 238 P.3d at 670 ("Our precedent recognizes the balance necessary to safeguard the district attorney's independence and to ensure the fairness of trials and protect them from those interests that interfere with, are contrary to, or are inconsistent with the pursuit of justice.").

■ ¶ 15 When, as here, however, the district attorney moves to disqualify herself, the plain language of the statute does not require such a showing. *Cf. Loper*, 241 P.3d at 546 (when a defendant moves to disqualify a district attorney under the special circumstances prong, he must show that doing so is necessary to ensure he will receive a fair trial); *People v. Victorian*, 165 P.3d 890, 893–94 (Colo.App.2007) ("A defendant may force the disqualification of a district attorney on either of two grounds: (1) the district attorney has a personal or financial interest in the case; or (2) there are 'special circumstances that would render it unlikely that the defendant would receive a fair trial.'" (quoting § 20–1– 107(2))).

¶ 16 These different standards for determining a motion to disqualify a district attorney are supported by separate procedural requirements dependent upon who has moved for the disqualification. *See* § 20–1–107(2). The procedural requirements further support the conclusion that motions filed by the district attorney, as opposed to any other movant, are to be treated differently. If the district attorney has filed the motion, it would be unreasonable to expect that she serve herself and respond to her own motion. *See State v. Nieto*, 993 P.2d 493, 501 (Colo. 2000) (we must avoid an interpretation that would lead to an absurd result).

¶ 17 The procedural requirements also provide that the court may grant the motion if requested by the district attorney or, when the motion is not filed by the district attorney, the court may grant the motion if it makes findings of personal or financial interest or special circumstances that will affect the fairness of the trial. *See* § 20–1–107 ("The motion shall not be granted unless requested by the district attorney *or* unless the court finds that the district attorney has a personal or financial interest or special circumstances exist that would render it unlikely that the defendant would receive a fair trial." (emphasis added)).

¶ 18 Therefore, here, because the motion to disqualify the Adams County District Attorney's Office and to appoint the Denver district attorneys as special prosecutors was made by the Adams County District Attorney's Office, the court was within its discretion to grant the motion without first finding that a conflict of interest or some other special circumstance existed that would render a fair trial unlikely. Because of our resolution of this issue based on the statute's plain language, we decline to address the People's alternative grounds in support of the district court's ruling.

III.   Fifth Amendment Right to Counsel

¶ 19 Aryee contends that the trial court violated his Fifth Amendment rights by admitting statements he made to the police after allegedly invoking his right to counsel. We disagree.

■ ¶ 20 Aryee's contention regarding the suppression issue presents a mixed question of law and fact. *People v. Lynn*, 2012 CO 45, ¶ 5, 278 P.3d 365. Thus, we defer to the trial court's findings of fact that have record support, but review its legal conclusions de novo. *People v. Broder*, 222 P.3d 323, 326 (Colo. 2010). "The trial court must assess the reliability of evidence and credibility of witnesses while making an independent assessment of whether the suspect 'sufficiently clearly' invoked the right to counsel based on the totality of the circumstances." *People v. Romero*, 953 P.2d 550, 555 (Colo.1998) ("When sufficient evidence exists in the record to support the trial court's findings of fact, we defer to those findings.").

¶ 21 The Fifth Amendment protects an accused's right to remain silent; however, the Supreme Court has interpreted it also to include a protection of the right to counsel once a defendant is subjected to custodial interrogation. *See Miranda v. Arizona*, 384

U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *see also People v. Vickery,* 229 P.3d 278, 280 (Colo.2010). Then an accused must be advised of this right. *See Vickery,* 229 P.3d at 280.

¶ 22 Although the accused need not use precise language to invoke his right to counsel, the request must be unambiguous and unequivocal. *Broder,* 222 P.3d at 326–27; *see Davis v. United States,* 512 U.S. 452, 459, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994). Where an accused unambiguously invokes his right to counsel, all questioning must cease. *Lynn,* ¶ 6; *Vickery,* 229 P.3d at 280. Where the request is ambiguous, however, the police need not stop questioning, though it may be good practice to limit the line of questioning following an ambiguous request to determine whether the accused was, in fact, invoking his right to counsel. *Davis,* 512 U.S. at 461, 114 S.Ct. 2350; *Lynn,* ¶ 8. "[I]f a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning." *Davis,* 512 U.S. at 459, 114 S.Ct. 2350.

¶ 23 To determine whether a statement is an unambiguous request for counsel, a court should objectively consider "whether the accused's statements 'can reasonably be construed to be an expression of a desire for the assistance of an attorney in dealing with custodial interrogation by the police.'" *Lynn,* ¶ 6 (quoting *McNeil v. Wisconsin,* 501 U.S. 171, 178, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991)); *see Davis,* 512 U.S. at 458–59, 114 S.Ct. 2350; *Broder,* 222 P.3d at 326. The court should consider the totality of the circumstances, including such factors as

the words spoken by the interrogating officer; the words used by the suspect in referring to counsel; the officer's response to the suspect's reference to counsel; the speech patterns of the suspect; the content of the interrogation; the demeanor and tone of the interrogating officer; the suspect's behavior during interrogation; the point at which the suspect invoked counsel; who was present during the interrogation; and the suspect's youth, criminal history, background; nervousness or dis-

tress, and feelings of intimidation or powerlessness.

*Lynn,* ¶ 7.

¶ 24 At the beginning of the interview, the detective advised Aryee of his rights. Aryee acknowledged, both orally and in writing, that he understood those rights and was waiving them. About twenty minutes into the interview, the following exchange took place:

DETECTIVE: But I'm asking you, did you guys have sex?

ARYEE: Yes.

. . .

DETECTIVE: Do you think you could be the father of her baby?

ARYEE: I don't know. I don't know. Because she confess [sic] to me more than three, four people have slept with her.

DETECTIVE: Would you be willing to give me a sample of your DNA? Do you know what DNA is?

ARYEE: Yeah.

DETECTIVE: Okay.

ARYEE: But until I talk to my lawyer, if I can talk to my lawyer.

¶ 25 Following this exchange, the detective immediately sought to clarify whether Aryee was asking to have counsel present during the interview. Although Aryee asked several questions and continued to discuss the incident, the detective refused to answer or substantively discuss the case until Aryee clarified that he was not invoking his right to an attorney at that time and wanted to continue talking to the detective.

¶ 26 Aryee asserts that his statement at the end of the quoted discussion above was an unambiguous request for counsel and that the entire interview following that statement should have been suppressed. Considering the totality of the circumstances, we conclude that Aryee did not make an unambiguous and unequivocal request for counsel.

¶ 27 "[W]here the statements sought to be suppressed are audio-and video-recorded, and there are no disputed facts outside the recording controlling the issue of suppression, we are in a similar position as the trial court to determine whether the statements

should be suppressed." *People v. Madrid,* 179 P.3d 1010, 1014 (Colo.2008); *see Lynn,* ¶ 9. We have reviewed the video recording and transcript of the interview and agree that Aryee's statement about his attorney was ambiguous. It is unclear whether Aryee was requesting an attorney at that time, or whether he only wanted to speak to one before giving a DNA sample. *Cf. People v. Bradshaw,* 156 P.3d 452, 457–58 (Colo.2007) (the key inquiry is whether the defendant's statement can reasonably be construed as a request for the assistance of counsel during the custodial interrogation). Thus, because Aryee's statement was ambiguous, the detective was not required to cease all questioning. *See Davis,* 512 U.S. at 458–59, 114 S.Ct. 2350; *Romero,* 953 P.2d at 554 ("An ambiguous communication is a 'type of conduct, giving rise to opposing inferences.' " (quoting *People v. Benjamin,* 732 P.2d 1167, 1171 (Colo.1987))). Additionally, the detective's limited follow-up questions were not coercive or harassing, but appear to have been aimed at clarifying Aryee's statement. *Cf. Lynn,* ¶ 16. And Aryee's response that he wanted to continue talking with the detective was emphatic and unequivocal.

¶ 28 Therefore, we conclude that the trial court did not err by admitting Aryee's interview statements.

### IV. Sufficiency of the Evidence

¶ 29 Aryee contends that the People failed to present sufficient evidence of K.W.'s age to support his convictions under sections 183–405(1), (2), C.R.S.2013, and 18–3–405.3(1), C.R.S.2013, which require that the victim be under fifteen years of age and between fifteen and eighteen years of age, respectively. We disagree.

¶ 30 We review issues regarding the sufficiency of the evidence de novo. *People v. Rowe,* 2012 COA 90, ¶ 8, 318 P.3d 57. To do so, we consider " 'whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt.' " *Id.* (quoting *Clark v. People,* 232 P.3d 1287, 1291 (Colo.2010)); *People v. Boles,* 280 P.3d 55, 63 (Colo.App.2011) ("We review the rec-

ord de novo to determine whether the evidence before the jury was sufficient both in quantity and quality to sustain defendant's convictions."). Although "we must give the prosecution the benefit of every reasonable inference which may be fairly drawn from the evidence ... there must be a logical and convincing connection between the facts established and the conclusion inferred." *Clark,* 232 P.3d at 1292. "Evidence is sufficient if 'a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Rowe,* ¶ 8 (quoting *Clark,* 232 P.3d at 1291).

¶ 31 K.W. was born in war-torn Sierra Leone and has no birth certificate. S.W. has taken care of K.W. since she was born and testified that K.W.'s mother, who was S.W.'s aunt, died during childbirth. S.W. testified that K.W. was born on June 6, 1993. K.W. also testified that that was her birthday.

¶ 32 Additionally, the People presented the following evidence related to K.W.'s age:

- S.W.'s ex-husband testified that he met K.W. when she was four years old, and that she acted like a normal four-year-old child;
- a family friend testified that when she met K.W. in 2005, she believed K.W. to be about nine or ten years old;
- the doctor who treated K.W. in 2009 when she was pregnant testified that K.W.'s demeanor and behavior were consistent with that of a sixteen-year-old child, maybe even someone a little younger; and
- a school resource officer, who interviewed K.W. about the incidents with Aryee, testified that her behavior was consistent with that of a fifteen- or sixteen-year-old child.

Furthermore, in his interview with the detective at the police station, which was introduced as evidence at trial, Aryee said that he believed K.W. was fifteen at the time of the incidents in question.

¶ 33 It is up to the jury to weigh the credibility of witnesses and to determine the weight to give the evidence. *People v. Arzabala,* 2012 COA 99, ¶ 13, 317 P.3d 1196 ("The determination of the credibility of witnesses is solely within the province of the fact find-

er, and it is the fact finder's function in a criminal case to consider and determine what weight should be given to all parts of the evidence and to resolve conflicts, testimonial inconsistencies, and disputes in the evidence."). We will not invade the province of the jury by assessing the credibility of or reweighing conflicting evidence. *See People v. Elliston,* 181 Colo. 118, 123, 508 P.2d 379, 381 (1973); *People v. Woll,* 178 Colo. 443, 444–45, 498 P.2d 935, 936 (1972); *see also Arzabala,* ¶ 13 ("An appellate court is not permitted to act as a 'thirteenth juror' and set aside a verdict because it might have drawn a different conclusion had it been the trier of fact.").

¶ 34 Here, sufficient evidence was presented from which a reasonable jury could have concluded that K.W. was fifteen years old at the time of the first incident and between fifteen and eighteen years old during the following incidents. *See Elliston,* 181 Colo. at 122–23, 508 P.2d at 381 ("The testimony of the prosecuting witness, if believed by the jury, was sufficient to establish the elements of the crimes with which the defendant was charged."); *Woll,* 178 Colo. at 444, 498 P.2d at 936.

¶ 35 The judgment is affirmed.

JUDGE HAWTHORNE and JUDGE J. JONES concur.