22CA1055 Peo v Nero 08-22-2024 COLORADO COURT OF APPEALS Court of Appeals No. 22CA1055 City and County of Denver District Court No. 20CR5702 Honorable Brian R. Whitney, Judge The People of the State of Colorado, Plaintiff-Appellee, v. Ramon K. Nero, Defendant-Appellant. JUDGMENT AFFIRMED Division II Opinion by JUDGE SULLIVAN Fox and Grove, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced August 22, 2024 Philip J. Weiser, Attorney General, Josiah Beamish, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee Kimberly Alderman Penix, Alternate Defense Counsel, Chelsey Bradley, Alternate Defense Counsel, Fort Collins, Colorado, for Defendant-Appellant 
 1 ¶ 1 Defendant, Ramon K. Nero, appeals the judgment of conviction entered on jury verdicts finding him guilty of several charges arising from his robbery of a convenience store. We affirm. I. Background ¶ 2 According to the People, Nero entered a Circle K convenience store in Denver in September 2020, demanded all the money in the cashier’s drawer, and then stabbed the cashier with a machete, resulting in life-threatening injuries. A surveillance camera partially captured the incident, showing a struggle between the cashier and a masked man wielding a machete. ¶ 3 Nero was arrested two days later for an unrelated incident in Aurora and later charged in this case. During his Aurora arrest, law enforcement officers confiscated a machete found on Nero’s person that had identifying markers similar to the machete used in the Circle K robbery. ¶ 4 While incarcerated and awaiting trial, Nero sent two letters to his ex-girlfriend. In the first letter, Nero stated that he was facing sixteen to forty-eight years in prison for “that robbery” “in Denver” 
 2 and that she drove him to the robbery. In the second letter, Nero asked her to provide him with an alibi for the night of the robbery. ¶ 5 At trial, the district court heard testimony from, as relevant here, Nero’s ex-girlfriend who received the two letters; Edward Lopez, an Aurora police officer who took Nero into custody for the unrelated offense; and Brian Mudloff, a Denver Police Department detective who investigated the Circle K robbery. ¶ 6 The jury found Nero guilty of assault in the first degree, assault in the second degree, and aggravated robbery. ¶ 7 Nero now appeals. He challenges the district court’s decisions admitting evidence of (1) the machete found on his person and his Aurora arrest and (2) the two letters he sent to his ex-girlfriend while incarcerated. We address each contention in turn. II. Analysis A. Machete and Aurora Arrest ¶ 8 We first address Nero’s contention that the district court erred by admitting irrelevant and unfairly prejudicial evidence regarding the machete found on his person and his Aurora arrest. 
 3 ¶ 9 We review the district court’s evidentiary rulings for an abuse of discretion. People v. Allgier, 2018 COA 122, ¶ 30. A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or when its ruling is based on an erroneous understanding or application of the law. Id. at ¶ 43. ¶ 10 To determine whether evidence is relevant, a court must determine if (1) the proffered evidence relates to a fact that is of consequence to the determination of the action; (2) the evidence makes the existence of a consequential fact more probable or less probable than it would be without the evidence; and (3) the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. People v. Carlson, 712 P.2d 1018, 1021-
22 (Colo. 1986) (quoting CRE 401 and 403). ¶ 11 Because the balance required by Carlson and Rule 403 favors admission, we afford the evidence the maximum probative value attributable by a reasonable fact finder and the minimum unfair prejudice to be reasonably expected. Allgier, ¶ 31. Evidence isn’t unfairly prejudicial under Rule 403 simply because it damages the defendant’s case. People v. Kembel, 2023 CO 5, ¶ 53; see also 
 4 People v. Dist. Ct., 785 P.2d 141, 147 (Colo. 1990) (“All effective evidence is prejudicial in the sense of being damaging or detrimental to the party against whom it is offered.”). ¶ 12 The prosecution moved to admit the details of Nero’s Aurora arrest and the machete that Nero was carrying in a sheath on his belt when taken into custody, alleging that the machete bore a resemblance to the weapon used in the robbery and was therefore probative of identity. The district court ruled that the evidence was relevant to identification and medical testimony regarding the wounds suffered by the cashier. The court stated that it wasn’t admitting the contested evidence as either CRE 404(b) or res gestae evidence, rendering a limiting instruction unnecessary. ¶ 13 We discern no abuse of discretion in the district court’s decision admitting the contested evidence. As to the first Carlson factor, the machete recovered from Nero, as the alleged weapon used in the robbery, related to a fact of consequence — specifically, identity (which Nero acknowledges is an element of each charge he faced). That is, if the prosecution could connect the machete recovered from Nero to the machete used in the Circle K robbery, it 
 5 would undoubtedly support an inference by the jury that Nero committed the robbery and assaulted the cashier. See, e.g., People v. Garcia, 784 P.2d 823, 826 (Colo. App. 1989) (“Evidence that defendant may have possessed an instrument which could have been used in the commission of the crime is admissible, provided a proper foundation is laid.”). ¶ 14 Evidence regarding the machete also satisfied the second Carlson factor because it made Nero’s identity as the assailant, a consequential fact, more probable than it would be without the evidence. During trial, Officer Lopez identified the machete in question as the one he recovered from Nero during his unrelated arrest in Aurora. Circle K’s security footage showed the assailant wielding what appeared to be a machete, and Officer Lopez testified that encountering people carrying machetes was “pretty rare.” He explained that he hadn’t previously encountered the specific model or type of machete that was recovered from Nero. ¶ 15 Detective Mudloff similarly testified that he had never seen the brand of machete recovered from Nero used in a robbery and that he rarely sees machetes used in robberies. He also testified that 
 6 both the machete recovered from Nero and the one used in the Circle K robbery were “very angular” and both bore the brand name on the blade just above the handle. The officers’ testimony regarding the distinctiveness of machetes and linking Nero’s specific machete with the machete used in the Circle K robbery permitted the jury to infer that Nero was the assailant. See, e.g., People v. Penno, 534 P.2d 795, 796 (Colo. 1975) (“The jury could view the pistol introduced into evidence and compare it to the description of the weapon given by the eyewitnesses.”). ¶ 16 We aren’t persuaded otherwise by Nero’s reliance on Kaufman v. People, 202 P.3d 542 (Colo. 2009). In Kaufman, our supreme court determined that the defendant’s possession of other weapons unrelated to the victims’ stabbings wasn’t relevant independent of the impermissible “bad character” inference that is prohibited by Rule 404(b). See id. at 555 (“None of [the knives] is significantly similar to the knife actually used in the altercation.”). But unlike the other weapons in Kaufman, the machete found on Nero was distinctive and bore similar features to the machete shown in the video of the robbery. Kaufman is therefore distinguishable. 
 7 ¶ 17 Evidence regarding the machete also satisfied the third Carlson factor and Rule 403. Affording the evidence its maximum probative value and assuming the minimum unfair prejudice to be reasonably expected, as we must, the machete itself was highly probative. It bore distinctive characteristics that allowed the jury to connect Nero to the machete used in the Circle K robbery. While Nero points to the lack of forensic testing establishing a scientific link between the machete and the Circle K robbery, the absence of conclusive test results goes to the evidence’s weight, not its admissibility. See People v. Hogan, 114 P.3d 42, 51 (Colo. App. 2004) (defects in the procedure for identifying a weapon outside the courtroom go to weight, not admissibility). ¶ 18 We therefore conclude that the district court didn’t abuse its discretion by admitting the machete into evidence. ¶ 19 Most of Nero’s argument regarding the irrelevancy of his arrest in Aurora is combined with his argument regarding the machete and not separately developed. To the extent that Nero separately challenges the relevancy of the officers’ testimony regarding his 
 8 Aurora arrest that resulted in the machete’s seizure, we perceive no abuse of discretion by the district court.
1 ¶ 20 Officer Lopez testified that he collected the machete when he “took [Nero] into custody.” No detail was provided on direct examination regarding why Officer Lopez took Nero into custody. Defense counsel then cross-examined Officer Lopez regarding the Aurora Police Department’s training on whether “there’s awareness that African Americans are disproportionately stopped by cops.” The following day, the prosecution requested that Detective Mudloff be allowed to testify to clarify that Nero wasn’t “stopped and frisked for no reason or something like that.” The district court agreed, and Detective Mudloff testified that Nero was carrying the machete when he was arrested for “an unrelated incident” in Aurora. 1 We disagree with the People’s argument that Nero didn’t object to the admissibility of his Aurora arrest. The record reflects that Nero contested, at the May 21, 2021 hearing, the “probative value of the fact that he was arrested with a knife.” See Rael v. People, 2017 CO 67, ¶ 17 (“We do not require that parties use ‘talismanic language’ to preserve an argument for appeal.” (quoting People v. Melendez, 102 P.3d 315, 322 (Colo. 2004)). 
 9 ¶ 21 We conclude that the district court acted within its broad discretion when admitting the officers’ testimony regarding Nero’s unrelated arrest in Aurora. Their brief testimony provided context for how the prosecution obtained the machete after officers found it on Nero’s person. See People v. Penn, 2016 CO 32, ¶ 32 (“[I]n some circumstances, police officers may testify about the reasons they took certain investigative steps, even where this testimony touches upon prohibited subjects.”). Neither officer provided details regarding the reason for Nero’s unrelated arrest.
2 Moreover, by cross-examining Officer Lopez regarding whether “there’s awareness that African Americans are disproportionately stopped by cops” in Aurora, Nero’s counsel opened the door to Detective Mudloff’s clarifying testimony about the circumstances of the Aurora Police Department’s initial contact with Nero. See, e.g., Venalonzo v. People, 2017 CO 9, ¶ 44. 2 Nero doesn’t challenge the admission of evidence regarding his Aurora arrest under CRE 404(b). 
 10 ¶ 22 Accordingly, we conclude the district court didn’t abuse its discretion by admitting the officers’ testimony about Nero’s unrelated arrest in Aurora. B. Admission of the Letters ¶ 23 Nero next argues that the district court erred by admitting two letters that he wrote to his ex-girlfriend while incarcerated and awaiting trial. Specifically, he contends that (1) the first letter was irrelevant and unfairly prejudicial and (2) admitting the second letter violated Rule 404(b). ¶ 24 As before, we review the district court’s evidentiary rulings for an abuse of discretion, Allgier, ¶ 30, and find none. 1. The First Letter ¶ 25 Nero’s first letter to his ex-girlfriend stated that he’s “facing 16 to 48 years in Denver from you driving me to that robbery so my next move is to have Krista or my mom tell the D.A. what I know about you helping me to do the robbery and how to find out through 7-11.” Nero threatened to incriminate his ex-girlfriend unless she “d[id] what I ask[ed].” Nero’s ex-girlfriend testified at trial that Nero sent the letter and that it matched his handwriting. 
 11 ¶ 26 Because the letter satisfies each of the Carlson factors, we conclude that the district court acted within its discretion when admitting the letter. First, the letter relates to a fact of consequence, namely Nero’s identity as the Circle K assailant. Nero admits in the letter that he committed “that robbery” “in Denver” and suggests that further evidence could be available “through 7-
11.” While we acknowledge that the letter mentions a “7-11” convenience store rather than a Circle K, the strength of the connection between the letter and the actual robbery goes to its weight, not its admissibility. See Mitchell v. People, 476 P.2d 1000, 1004 (Colo. 1970). ¶ 27 Second, the letter possessed logical relevance — it made the existence of a consequential fact more probable than it would be without the evidence — because it constituted an admission by Nero that he committed a robbery. In particular, Nero’s admissions that he committed “that robbery” “in Denver” and that evidence was available through a convenience store both showed his consciousness of guilt and tended to connect him to the charged crimes. See, e.g., People v. Crespi, 155 P.3d 570, 575 (Colo. App. 
 12 2006) (jury could infer from the defendant’s letter that she was involved in manufacturing methamphetamine, even though it “did not specify an exact time or place and did not make explicit reference to controlled substances”). ¶ 28 Finally, we perceive no unfair prejudice caused by the letter’s admission. We recognize that the letter contained threats and vulgarity directed at Nero’s ex-girlfriend. But when we presume the letter’s maximum probative value and the minimum unfair prejudice to be reasonably expected, we can’t say that the district court abused its discretion by overruling Nero’s objection, particularly here where Nero’s admission in the letter directly refuted his core defense of misidentification. See People v. Robinson, 713 P.2d 1333, 1336 (Colo. App. 1985) (“The probative value of defendant’s statement is apparent because it relates to the ultimate issue in the case.”); see also Kembel, ¶ 53 (“[T]he fact that evidence is prejudicial doesn’t render it inadmissible; only unfairly prejudicial evidence is inadmissible.”). ¶ 29 Accordingly, the district court didn’t abuse its discretion by admitting the first letter over Nero’s relevancy objection. 
 13 2. The Second Letter ¶ 30 We next address Nero’s contention that the district court violated Rule 404(b) by admitting the second letter. ¶ 31 Nero wrote to his ex-girlfriend in the second letter that he was “sorry for the way I came at you in my last letter” and that “I’m taking [a] chance here contacting you.” Nero stated that “[y]ou can write me back in a different name” and “all I want to know is can you help me I need a[n] alibi in Denver so I can beat the case[.]” The district court provided a limiting instruction to the jury, stating the letter was “being presented to show consciousness of guilt only. You may not consider [the letter] for any other purpose whatsoever but for that purpose alone.” As with the first letter, Nero’s ex-
girlfriend testified that Nero sent the letter and that it was in his handwriting. ¶ 32 The admissibility of other acts evidence is governed by Colorado Rule of Evidence 404(b). Rule 404(b) prohibits the use of “evidence of other crimes, wrongs, or acts . . . to prove the character of a person in order to show that the person acted in conformity” with his character. CRE 404(b)(1). But such “evidence may be 
 14 admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.” CRE 404(b)(2). ¶ 33 However, not all uncharged misconduct evidence triggers Rule 404(b). Rojas v. People, 2022 CO 8, ¶ 52. The district court must first determine if the evidence is intrinsic or extrinsic to the charged offense. Id. “Intrinsic acts are those (1) that directly prove the charged offense or (2) that occurred contemporaneously with the charged offense and facilitated the commission of it.” Id. Evidence of acts that are intrinsic to the charged offense is exempt from Rule 404(b) because it isn’t “other” crimes, wrongs, or acts, although such evidence must still satisfy Rules 401-403. Id. If the acts are extrinsic and implicate the defendant’s bad character, the evidence is admissible only as provided by Rule 404(b) after an analysis under People v. Spoto, 795 P.2d 1314 (Colo. 1990). Rojas, ¶ 52. ¶ 34 To be admissible under Spoto, the evidence must (1) relate to a material fact; (2) be logically relevant; (3) have logical relevance independent of the inference that the defendant has a bad character and committed the charged crime in conformity with such 
 15 character; and (4) have a probative value that isn’t substantially outweighed by the danger of unfair prejudice. Spoto, 795 P.2d at 1318. ¶ 35 At the outset, we conclude that Nero’s authoring of the second letter constitutes an extrinsic act because the letter didn’t directly prove that he committed the charged crimes. See Rojas, ¶ 52. Nero also didn’t write the letter contemporaneously with the charged offenses, nor did it facilitate their commission. Id. ¶ 36 Next, we will assume without deciding that Nero’s act of requesting a false alibi from his ex-girlfriend “suggest[s] bad character” within the meaning of Rule 404(b). Id. (“[I]f extrinsic evidence does not suggest bad character, Rule 404(b) does not apply and admissibility is governed by Rules 401-403.”). Neither party addresses this issue but rather assumes that Rule 404(b) applies. We therefore proceed under the same assumption. ¶ 37 Turning to Spoto, we discern no abuse of discretion in the district court’s decision admitting the second letter. First, the second letter, which showed Nero’s consciousness of guilt, related to a material fact — whether Nero committed the criminal acts at 
 16 the Circle K as alleged. See, e.g., People v. Acosta, 2014 COA 82, ¶ 59 (evidence showing consciousness of guilt is “relevant because it tend[s] to prove [that the] defendant committed the charged act”). ¶ 38 Second, by asking his ex-girlfriend to provide him with a false alibi, Nero’s second letter was logically relevant because it had a tendency to make the existence of a material fact — that he committed the criminal acts as alleged — more probable than it would be without the letter. A juror reading the letter could reasonably infer Nero’s guilt from his expressed desire to conceal his role in the robbery. See id.; People v. Curtis, 2014 COA 100, ¶ 52 (defendant’s concealment of “the stillborn baby’s body tend[ed] to evince consciousness of guilt”). ¶ 39 Third, the letter possessed logical relevance independent of the intermediate inference that Nero had a bad character and acted in conformity with his bad character. See Spoto, 795 P.2d at 1318. Regardless of whether the jury might have believed that Nero possessed bad character due to his attempted witness tampering, or acted in conformity with such character, the letter was logically relevant because it tended to show his consciousness of guilt, 
 17 allowing the jury to draw the inference that Nero was the assailant in the Circle K robbery. See Acosta, ¶ 59; People v. Medina, 51 P.3d 1006, 1013 (Colo. App. 2001) (evidence was admissible under Rule 404(b) to show consciousness of guilt because it showed defendant’s “knowledge of the crime as well as his attempt to conceal his role in the victim’s death”), aff’d, 71 P.3d 973 (Colo. 2003). Moreover, the district court mitigated any danger of the jury making a prohibited inference by instructing the jurors that the second letter couldn’t be considered for any purpose other than showing Nero’s consciousness of guilt. Absent evidence to the contrary, we presume that the jury heeded the court’s limiting instruction. People v. Rowe, 2012 COA 90, ¶ 46. ¶ 40 Finally, the second letter’s probative value wasn’t substantially outweighed by the danger of unfair prejudice. Id. Although the letter was unfavorable to Nero, it was highly probative because it revealed his attempt to conceal his role in the robbery. See, e.g., People v. Baca, 852 P.2d 1302, 1308-09 (Colo. App. 1992) (“The evidence concerning defendant’s flight . . . was relevant to his consciousness of guilt, and its probative value was not substantially 
 18 outweighed by the danger of unfair prejudice.”). Further, the letter wasn’t “unfairly prejudicial” since it didn’t lead the jury to render its decision on an improper basis. See Rowe, ¶ 45. Rather, the district court instructed the jury that it could consider the letter only to show Nero’s consciousness of guilt. ¶ 41 Accordingly, the district court didn’t abuse its discretion by admitting the second letter. III. Disposition ¶ 42 We affirm the judgment. JUDGE FOX and JUDGE GROVE concur.