DRAKE, J.
| ./The State charged the defendant, Justin Granger Smith, by bill of information with possession of methamphetamine, a violation of La. R.S. 40:967(C). Smith pled not guilty. Following a jury trial, a unanimous jury found Smith guilty as charged. The trial court sentenced Smith to five years imprisonment at hard labor. The State filed a habitual offender bill of information, alleging Smith was a fourth-felony habitual offender.[1] Smith admitted to the allegations in the habitual offender bill of information. The trial court adjudicated Smith a fourth-felony habitual offender, vacated his five-year sentence, and resen-tenced Smith to twenty years imprisonment at hard labor, without the benefit of parole or suspension of sentence. Smith filed a motion for reconsideration, which the trial court denied. Smith now appeals, designating two assignments of error. For the following reasons, we affirm Smith’s conviction and habitual offender adjudication.' We amend Smith’s sentence and affirm as amended.

FACTS

Christopher Comeaux, a narcotics detective with the St. Tammany Parish Sheriffs Office, received information from a source about Smith’s involvement with possible illegal activity. On May 8, 2013, Det. Co-meaux began surveillance in an unmarked police vehicle on a residence[2] on Camellia Drive in Slidell, where Smith was located. Dets. Julie Boynton and Chad Melendez, both detectives with the St. Tammany Parish Sheriffs Office, arrived at the surveillance location in a second unmarked police vehicle location to provide backup to Det. Comeaux. Dets. Boynton and Melendez moved their unit into the driveway of an unoccupied house next to the surveillance location. Det. Comeaux moved his unit several |8streets down toward the front of the neighborhood, in a position to follow Smith, should he leave the residence.
During the surveillance, Joseph Rizzuto (unknown to the detectives) pulled into the driveway of the residence under surveillance in a red tow truck. Rizzuto went inside the residence and, a short time later. Smith and Rizzuto left the residence together in Rizzuto’s vehicle. They drove past Det. Boynton and Det. Melendez’s unit and stopped. Rizzuto and Smith exited their vehicle. Smith approached the driver’s side of the unit to speak with Det. Boynton. Smith asked Det. Boynton what she was doing. To preserve her cover, Det. Boynton concocted a story about being there to look at the residence, which she thought was for sale. Smith and Riz-zuto got in Rizzuto’s vehicle and had just begun driving away when Det. Boynton contacted Det. Comeaux and told him that she smelled marijuana on Smith. Det. Comeaux told Det. Boynton to execute a stop of Rizzuto’s vehicle. Det. Boynton drove her unit behind Rizzuto’s vehicle, and activated the lights and sirens, but Rizzuto would not stop. Det. Comeaux then drove his unit in front of Rizzuto’s vehicle to force Rizzuto to stop.
Just prior to the stop, Det. Co-meaux saw Smith, who was on the passenger side, drinking out of a white Styrofoam cup in an erratic fashion. With the drink spilling from the cup onto Smith’s face, *115 Det. Comeaux thought Smith was trying to hastily swallow something. During the stop, Det. Comeaux focused primarily on Smith, as he was the target of the investigation. While Det. Melendez conducted a pat-down search and placed Smith in handcuffs, Det. Comeaux Mimndised[3] Smith. Det. Comeaux asked Smith what he was trying to swallow. Smith stated that he was not trying to swallow anything. Det. Comeaux observed bits of green I ¿vegetable material on Smith's lip that appeared to be marijuana. Det. Comeaux asked Smith to spit what he had in his mouth onto the flatbed of the truck. Smith complied, and the detective collected it as evidence. Smith later admitted to Det. Comeaux that he had been trying to swallow marijuana. Detective Comeaux arrested Smith and initiated a search of Rizzuto’s vehicle. From a center console, passenger side cup-holder, Det. Comeaux seized the white cup that he observed Smith drinking from. The cup, which still contained liquid, appeared to Det. Co-meaux to have marijuana gleanings around the inside rim. Det. Comeaux separated the liquid from the cup and packaged the cup to be sent to the crime lab for analysis. Sometime later, the crime lab informed Det. Comeaux that there was a coffee filter in the white Styrofoam cup that the detective had sent the lab in reference to Smith’s ease. Det. Comeaux informed the lab to test both the cup and the coffee filter. An analysis of the cup with the coffee filter revealed that the cup contained methamphetamine. The gleanings in the cup tested positive for marijuana. Det. Comeaux also found a small bag of methamphetamine under the driver’s seat of Rizzuto’s vehicle and three small, cut straws in the center console, whose residue tested positive for methamphetamine and oxycodone. The detectives found two pill bottles containing oxycodone pills on Riz-zuto’s person.' Smith did not testify at trial. ■

ASSIGNMENT OF ERROR NO. 1

In his first assignment of error, Smith argues the trial court erred in partially denying his motion in limine. Specifically, Smith contends that the cup and coffee filter should not have been allowed into evidence because it was not more probable than not that all of this evidence was connected to this case.
Smith filed a pretrial motion in limine to exclude certain evidence at trial and any reference thereto, including the coffee filter.' The trial court granted the motion in part, finding certain evidence inadmissible at trial. The trial court, | ¡¡however, denied the motion in part, finding that the coffee filter and testimony about the filter would be allowed at trial. In particular, the trial court noted, “[fit’s going to go to the jury and they will determine whatever weight they want to give and whatever explanations the detective can give and that’s really part of the case.”
Smith argues that the coffee filter should not have been allowed into evidence because Det. Comeaux did not indicate there was a coffee filter in the Styrofoam cup when he packaged the cup and filled out the information on the evidence label. Smith points out several other alleged “inadequacies” in the evidence. For example, Det. Comeaux seized the cup at 11 a.m., *116 but the evidence label indicates it was collected at 2:11 p,m.; the detective, according to Smith, testified he had made a mistake. Also, Smith notes, the evidence was not taken to the crime lab until eighteen days after it was collected. According to Smith, the coffee filter was not in the cup when Det. Comeaux seized the cup; yet the, filter was in the' cup when Deputy Britney Graham, forensic scientist with the St. Tammany Parish Sheriffs Office Crime Laboratory, opened the bag at the crime lab to test the evidence. There, was no explanation, Smith suggests, for how the filter got in the cup.. Thus, . according to Smith, the trial court erred in denying the motion in limine since it was not more probable than not “that the filter was connected to this case.”
The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. La. C.E. art. 901(A). With some exceptions, all relevant evidence is admissible at trial. La. C.E. art. 402. “Relevant evidence” is that which tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. La. C.E. art. 401. Fruits and physical evidence of a crime as well as weapons used to commit a crime are relevant to show ‘ the commission of such crime and are therefore generally admissible at trial. State v. Foster, 263 La. 43, 267 So.2d 188 (La.1972) (per curiam), (decided under former version of the law). Relevant evidence may be excluded at trial if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time. La. C.E. art. 403.
To be admitted at trial, demonstrative evidence must be identified. This identification can be visual, that is, by testimony at trial that the object exhibited is the one related to the case. Alternatively, the evidence can be identified by a chain of custody, that is, by establishing the custody of the object from the time it was seized until the time it was offered into evidence. In order to introduce demonstrative evidence, it suffices if the foundation laid establishes that it is more proba-' ble than not that the object is- the one connected to the case. State v. Crochet, 96-1666 (La.App. 1 Cir. 5/9/97), 693 So.2d 1300, 1305, writ denied, 97-1547 (La.11/21/97), 703 So.2d 1305. See State v. Sweeney, 443 So.2d 522, 528 (La.1983).
In the instant matter, the State laid the proper foundation before the trial court allowed State’s Exhibit 1 (labeled as Exhibit N-l by the crime lab), the white Styrofoam cup with the coffee filter, to be admitted into evidence.[4] Chain of custody was established through the testimony of Det. Comeaux, who seized the cup from the truck Smith was in, following a search of the vehicle incident to Smith’s arrest. Det. Comeaux packaged the cup at the crime scene with packaging material he kept in his police unit. He filled out the evidence label, then kept the cup in his personal evidence locker in' his office, before turning it oyer to Deputy Graham at the Louisiana Crime Lab. Det. Comeaux explained at trial that the |,eighteen-day gap between the time he seized the. cup and the time he turned it over to the crime *117 lab was because he had been out of town for two weeks.
Det. Comeaux testified at trial that Deputy Graham contacted him after she got the cup to analyze. She informed the detective that a coffee filter was in the cup; since the detective had not included a description of the* coffee filter on the evidence label, the deputy asked him if he wanted her to also analyze the filter. The detective informed her that he wanted her to analyze both the cup and the filter. Det. Comeaux explained at trial that he did not see the coffee filter in.the cup when he packaged it at the scene. According to the detective, when he removed the cup from the truck, the cup was about-one-quarter full of red liquid. The detective observed green gleanings around the inside of the cup that appeared to be marijuana. Since liquids are not sent-to the crime lab for testing, Det. Comeaux obtained a brown bag from his unit, placed it on, top of the cup, and filtered the red liquid through the cup onto the ground; his intent was to remove the liquid, but keep the marijuana gleanings inside, the cup. When the red drink finished draining, Det. Comeaux took the brown bag off the top of the cup and, without looking into the cup, placed the cup into an evidence bag and sealed it. The detective further explained at trial that it did not surprise him that the filter had methamphetamine on it since coffee filters are used in the production of methamphetamine. Det. Co-meaux made clear that there was no chance that he, himself, had accidentally or mistakenly placed the coffee filter in the cup.
The trial court was persuaded as to the relevance of the coffee filter both by Det. Comeaux’s testimony that the coffee filter was seized along with the cup at the crime scene, and that the coffee filter contained methamphetamine, the basis of the instant charge. As to any evidentiary “inadequacies” regarding the time the evidence was seized 'or the length of time it took the evidence to reach the crime lab, all of this information was placed before the jury to weigh the evidence. Lack of positive identification or a defect in the chain of custody goes-to the weight of the evidence rather than to its admissibility. State v. Spradley, 97-2801 (La.App. 1 Cir. 11/6/98), 722 So.2d 63, 69, writ denied, 99-0126 (La.6/25/99), 745 So.2d 625. Ultimately, a chain of custody or connexity of the physical evidence is a factual matter for determination by the jury. State v. Patton, 2010-1841 (La.App. 1 Cir. 6/10/11), 68 So.3d 1209, 1222.
The coffee filter was clearly relevant as an item that proved Smith’s possession of methamphetamine. The reddish color of the coffee filter, as pointed out by Deputy Graham in both "her trial testimony and crime lab report, indicates the filter was inside the cup that contained red drink at the time it was seized. As such, it was clearly more probable than not connected to the case. The trial court, therefore, correctly allowed the coffee filter exhibit to be introduced into evidence and shown to the jury. See Crochet, 693 So.2d at 1305.
Based on the foregoing, the trial court did not err in. its partial denial of the defendant’s motion in, limine. This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2

In his second assignment of érror, "Smith argues that his sentence was excessive. Specifically, Smith contends that, while his twenty-year sentence is the statutory minimum for a fourth-felony habitual offender, a downward departure from this sentence is appropriate because a twenty-year sentence is equivalent to a life sentence in this case.
*118 The Eighth Amendment to the United States Constitution and Article I, § 20, of the Louisiana State Constitution prohibit the imposition of cruel or excessive punishment. Although a sentence falls within statutory limits, it may be excessive. State v. Sepulvado, 367 So.2d 762, 767 (La.1979). A sentence is considered constitutionally excessive if it is grossly disproportionate to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and ^suffering. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks one’s sense of justice. State v. Andrews, 94-0842 (La.App. 1 Cir. 5/5/95), 655 So.2d 448, 454. The trial court has great discretion in imposing a sentence within the statutory limits, and such a sentence will not be set aside as excessive in the absence of a manifest abuse of discretion. See State v. Holts, 525 So.2d 1241, 1245 (La.App. 1st Cir.1988). On appellate review of a sentence, the relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. State v. Thomas, 98-1144 (La.10/9/98), 719 So.2d 49, 50 (per curiam).
The defendant in the instant matter was adjudicated a fourth-felony habitual offender. Pursuant to La. R.S. 15:529.1(A)(4)(a), the trial court imposed the minimum sentence of twenty years.[5] Smith points out in brief that he is in his late thirties and suffers from heart and kidney disease; he also suggests that the twenty-year sentence was a result of his being penalized for exercising his right to proceed to trial rather than accept a pretrial plea offer of a three-year sentence without the filing of habitual offender proceedings.
In State v. Dorthey, 623 So.2d 1276, 1280-81 (La.1993), the Louisiana Supreme Court opined that if a trial judge were to find that the punishment mandated by La. R.S. 15:529.1 makes no “measurable contribution to acceptable goals of punishment” or that the sentence amounted to nothing more than “the purposeful imposition of pain and suffering” and is “grossly out of proportion to the severity of the crime,” he has the option, indeed the duty, to reduce such sentence to one that would not be constitutionally excessive. In State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, 676-77, the Louisiana Supreme Court reexamined the issue of when Dorthey permits a downward departure from the mandatory minimum sentences under the Habitual Offender Law.
A sentencing judge must always start with the presumption that a mandatory minimum sentence under the Habitual Offender Law is constitutional. A court may only depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular case before it which would rebut this presumption of constitutionality. A trial judge may not rely solely upon the nonviolent nature of the instant crime or of past crimes as evidence which justifies rebutting the presumption of constitutionality. While the classification of a defendant’s instant or prior offenses as nonviolent should not be discounted, this factor has already been taken into account under the Habitual Offender Law for third and fourth offenders. Johnson, 709 So.2d at 676.
*119 To rebut the presumption that the mandatory minimum sentence is constitutional, a defendant must clearly and convincingly show that he is exceptional, which means that because of unusual circumstances, this defendant is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. Given the legislature’s constitutional authority to enact statutes such as the Habitual Offender Law, it is not the role of the sentencing court to question the wisdom of the legislature in requiring enhanced punishments for multiple offenders. Instead, the sentencing court is only allowed to determine whether the particular defendant before it has proven that the mandatory minimum sentence is so excessive in his case that it violates the constitution. Departures downward from the minimum sentence under the Habitual Offender Law should occur only in rare situations. Johnson, 709 So.2d at 676-77.
During deliberations, the jury asked to see the cup and coffee filter. Smith contends that, given the conduct of the jury, it is apparent he was convicted of dispossession of methamphetamine residue found in the cup. (Defendant’s brief at p. 7). Smith was not sentenced to twenty years for possession of methamphetamine. Eather, under the Habitual Offender Law, Smith, a recidivist with multiple felony convictions, is being punished for the instant crime in light of his continuing disregard for the laws of our state. See Johnson, 709 So.2d at 676-77.
There is nothing particularly unusual about Smith’s circumstances that would justify a downward departure from the twenty-year sentence imposed under La. R.S. 15:529.1. We note as well there is nothing in the record that shows Smith’s sentence was a product of vindictiveness by the State or the trial court. Smith has not proven by clear and convincing evidence that he is exceptional such that a twenty-year sentence would not be meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. See Johnson, 709 So.2d at 676. The sentence is not unconstitutionally excessive. Accordingly, the trial court did not err in denying the motion to reconsider sentence. This assignment of error is without merit.

SENTENCING ERROR

The trial court sentenced Smith, as a habitual offender, to twenty years imprisonment at hard labor without benefit of parole or suspension of sentence. The minute entry in the appellate record also indicates Smith’s twenty-year sentence is “to be served without benefit of parole or suspension of sentence.” Smith’s sentencing exposure for the underlying crime of possession of methamphetamine was imprisonment, with or without hard labor, for not more than five years. See La. R.S. 40:967(C)(2). The sentence contains no parole restriction. Accordingly, Smith’s enhanced sentence as a habitual offender should have been without probation or suspension of sentence, but should not have contained a parole restriction. See La. R.S. 15:529.1(A)(4)(a) and 15:529.1(G); see also State v. Bruins, 407 So.2d 685, 687 (La.1981). Inasmuch as an illegal 1 ^sentence is an error discoverable by a mere inspection of the proceedings without inspection of the evidence, La. C.Cr.P. art. 920(2) authorizes consideration of such an error on appeal. Further, La. C.Cr.P. art. 882(A) authorizes correction by the appellate court.[6] Accordingly, we *120 amend the sentence by removing the parole restriction and affirm as amended. We remand for correction of the minutes and the commitment order.
CONVICTION AND HABITUAL OFFENDER ADJUDICATION AFFIRMED; SENTENCE AMENDED TO REMOVE THE PAROLE RESTRICTION, AND AFFIRMED AS AMENDED; REMANDED FOR CORRECTION OF THE MINUTES AND THE COMMITMENT ORDER.

. The habitual offender bill of information set forth nine predicate convictions.

. The residence was owned by a friend of Smith’s.

. Prior to any questioning, the person must be warned that he has the right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly, and intelligently. Miranda v. Arizona, 384 U.S. 436, 444-445, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966).

. In the scientific analysis report, Exhibit 1 was divided into Exhibit 1A (one Styrofoam cup containing red colored residue and one coffee filter containing red colored residue; and Exhibit IB (loose gleanings of vegetative material).

. The person shall be sentenced to imprisonment for the fourth or subsequent felony for a determinate term not less than the longest prescribed for a first conviction but in no event less than twenty years and not more than his natural life. La. R.S. 15:529.1(A)(4)(a).

. An illegal sentence may be corrected at any time by the court that imposed the sentence *120 or by an appellate court on review. La. C.Cr.P. art. 882(A).