The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
August 23, 2018

**2018COA122**

**No. 16CA1801 People v. Allgier — Evidence — Relevancy and its Limits — Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion, or Waste of Time; Crimes — Possession of Weapons by Previous Offenders**

In this case, a division of the court of appeals rejects a plain error assertion based on CRE 403 and upholds the trial court's admission of firearms that were the instrumentality of the crime (POWPO), although photographs of them had already been introduced.

Court of Appeals No. 16CA1801
El Paso County District Court No. 15CR6162
Honorable Richard Hall, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Cameron Douglas Allgier,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE WEBB
Fox, J., concurs
Nieto*, J., specially concurs

Announced August 23, 2018

Cynthia H. Coffman, Attorney General, Majid Yazdi, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Anne Parker, Alternate Defense Counsel, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2017.

¶ 1     A jury convicted Cameron Douglas Allgier of possession of a weapon by a previous offender (POWPO). He seeks a new trial on four grounds:

- the trial court plainly erred in admitting into evidence the three firearms that were the basis for the POWPO charge, in addition to photographs of them;

- the trial court erred in admitting hearsay statements of a witness, which improperly bolstered that witness's testimony;

- the trial court plainly erred in allowing the prosecutor to mischaracterize the evidence and the law during closing argument; and

- the cumulative effect of these errors was prejudicial.

The possible prejudice from admitting firearms into evidence has not been addressed in Colorado.

¶ 2     We affirm.

## I.  Background

¶ 3     During a burglary, several firearms were stolen. M.S., a suspect in the burglary, told police that he had seen defendant — a previous offender but not one of the burglars — in the back seat of a vehicle next to a box containing some of the stolen firearms. M.S.

1

also said that the firearms might be found at an apartment in Arvada associated with defendant. The police went to the apartment, seized three of the stolen firearms, and arrested defendant.

## II. Any Error in Admitting the Firearms Was Not Plain

¶ 4 During the prosecution's case, a police officer identified two photographs depicting the firearms seized from the apartment. When the prosecutor offered these photographs, defense counsel said, "no objection." Then the prosecutor had the officer identify each of the firearms, which the prosecutor separately offered into evidence. Again, as each of the firearms was offered, defense counsel said, "no objection." No colloquy concerning any of these exhibits occurred.

¶ 5 Now, defendant argues that because the firearms were unduly prejudicial under CRE 403, the trial court plainly erred in admitting them. We conclude that plain error did not occur.

### A. Waiver

¶ 6 In the answer brief, the Attorney General argued that we should not review this contention for plain error because defendant waived it. The Attorney General relied on *People v. Rediger*, 2015

COA 26, ¶ 59 (*Rediger I*), *aff'd in part and rev'd in part*, 2018 CO 32 (*Rediger II*). There, defense counsel told the trial court that he had read the jury instructions and was "satisfied." *Rediger I*, ¶ 47. On this basis, the division concluded that instructional error had been waived. *Id.* at ¶ 64.

¶ 7    But the supreme court reversed in part, holding that counsel's colloquy with the court did not show either actual knowledge or intentional relinquishment of the defendant's right to have the jury correctly instructed on the elements of the offense charged in the indictment. *Rediger II*, ¶ 45. Because the supreme court's decision was announced after briefing had closed in this case, we requested supplemental briefs on waiver.

¶ 8    Defendant did not file a supplemental brief.

¶ 9    The Attorney General's supplemental brief seeks to distinguish *Rediger II* as follows:

> [T]he waiver issue here does not raise the concern regarding counsel's possible lack of knowledge of the basis for making the relevant objection. Both Defendant and his counsel were clearly aware of the evidence that the prosecution was seeking to admit. Therefore, counsel's statement that he had no objection to the admission of the guns into evidence cannot be attributable to a lack of knowledge

3

> of the nature of the evidence or to an oversight. Unlike Rediger's "general acquiescence" to the jury instructions as a whole, here Defendant stated his lack of objection to the admission of a very specific and obvious evidence.

But this attempted distinction assumes something that *Rediger II* does not say — exactly what "known" means in evaluating whether defense counsel intentionally relinquished a known right. ¶ 39. Nor have we found such a definition in any Colorado case considering waiver by counsel in the criminal context.

¶ 10 When the prosecution offers evidence and defense counsel responds "no objection," six explanations are possible.[1]

- Defense counsel was uninformed of the legal basis for an objection.

- Defense counsel knew of the legal basis for an objection, but did not recognize the factual basis for an objection.

- Defense counsel knew of both, but failed to connect them.

- Defense counsel was aware of both, but concluded that preserving an objection would be meritless.

---

[1] In identifying these possibilities, we acknowledge the "untenable burden" of "assessing counsel's strategy[, which] does not fall within the purview of the trial court." *People v. Gross*, 2012 CO 60M, ¶ 11.

- Defense counsel was aware of both, but concluded that admission of the evidence could be of strategic benefit to the defendant.

- Defense counsel was aware of both, but concluded that declining to object could sow the seeds for appellate reversal under the plain error standard, in the event of a conviction.

¶ 11    Where subject to any of the first three explanations, "no objection" will never constitute a waiver under *Rediger II*. The fourth, fifth, or sixth explanations could get over this hurdle, but often the record will not be adequately informative.

¶ 12    As to the first and second explanations, in some cases defense counsel might embellish "no objection" with words indicating awareness of the legal or factual basis for an objection. *See People v. Tee*, 2018 COA 84, ¶ 37 ("Opposite to what occurred in *Rediger II*, here the dialogue between defense counsel and the trial court over this issue went far beyond a 'rote statement that [counsel] is not objecting . . . .'" (quoting *United States v. Zubia-Torres*, 550 F.3d 1202, 1207 (10th Cir. 2008))); *see also People v. Kessler*, 2018 COA 60, ¶ 35 (The court declined to apply *Rediger II* where "defense counsel took the position that the tests were admissible and that

the only question was the weight to be given them.").  But here, counsel said only "no objection" when each firearm was offered.

¶ 13    As to the third explanation, even absent such a statement, our supreme court presumes counsel has some level of legal acumen. *See Stackhouse v. People*, 2015 CO 48, ¶ 16 ("'[W]e presume that attorneys know the applicable rules of procedure,' and we thus 'can infer from the failure to comply with the procedural requirements that the attorney made a decision not to exercise the right at issue.'") (citation omitted).  As well, the record may compel the conclusion that counsel must have been aware of the factual basis for an objection.  *See id.* at ¶ 16 ("Allowing a defense attorney who stands silent during a known closure to then seek invalidation of an adverse verdict on that basis would encourage gamesmanship . . . .").

¶ 14    So, is the courtroom closure in *Stackhouse,* which was found to have been waived based only on defense counsel's failure to object, different from a routine evidentiary question?  Although *Rediger II* did not cite *Stackhouse*, we conclude that the answer is yes, for three reasons.

6

¶ 15 First, an unwarranted courtroom closure is structural error, while improper admission of evidence is trial error. *Compare Stackhouse,* ¶ 7 ("Such a violation is structural error that requires automatic reversal without individualized prejudice analysis."), *with People v. Summitt,* 132 P.3d 320, 327 (Colo. 2006) (subjecting "evidentiary trial error" to "harmless error analysis"). The magnitude of the error supports the presumption in *Stackhouse* that counsel must have known of the proper legal procedure. ¶ 16.

¶ 16 Second, and because of the structural error dimension, a complete courtroom closure, as in *Stackhouse,* rarely occurs. In contrast, the offer of physical evidence that represents the fruit or instrumentality of the crime, sometimes referred to as the "corpus delicti" — such as the firearms in this case, or drugs or stolen property in other cases — is routine, even if cumulative of other evidence or testimony. *See State v. Smith,* 181 So. 3d 111, 116 (La. Ct. App. 2015) ("Fruits and physical evidence of a crime as well as weapons used to commit a crime are relevant to show the commission of such crime and are therefore generally admissible at trial."). The infrequency of complete courtroom closures supports

the presumption in *Stackhouse* that counsel could not have overlooked what was happening.

¶ 17    Third, a courtroom closure requires specific findings, even absent any objection by the parties. *See People v. Hassen*, 2015 CO 49, ¶ 9 ("[T]rial courts are obligated to take *every reasonable measure* to accommodate public attendance at criminal trials" and "must make findings adequate to support the closure." (first quoting *Presley v. Georgia*, 558 U.S. 209, 215 (2010) (per curiam); then quoting *Waller v. Georgia*, 467 U.S. 39, 45 (2015))).  But the trial court need not make findings before admitting fruit or instrumentality evidence.  And the absence of any specific findings when the prosecutor offered the firearms into evidence could have lulled defense counsel into making a rote "no objection" response.

¶ 18    These three observations show that the waiver analysis in *Stackhouse* involved a two-step process — the legal requirement of a public trial, subject to very limited exceptions, and a courtroom closure.  But the waiver analysis in *Rediger II* involved a three-step process — the legal requirement that the elemental instruction track the charged offense, the elemental instruction that did not satisfy this requirement, *and defense counsel's actual recognition of*

8

*the deficiency in the instruction.*  Still, declining to follow *Rediger II* here based on *Stackhouse* does not end the inquiry.  So, we take up the fourth, fifth, and sixth explanations for why counsel might have foregone an objection.

¶ 19    As to the fourth explanation — choosing not to make a meritless objection — "counsel's failure to argue the issues in summation or to object to the patent omission in the charge implies that the issues in question were not thought worth contesting; and to reverse on this ground would enhance the opportunities for 'sandbagging' the district judge."  *United States v. Whiting*, 28 F.3d 1296, 1309-10 (1st Cir. 1994).  To be sure, "[t]he sixth amendment right to effective assistance of counsel does not require counsel to raise every objection without regard to its merits."  *Palmes v. Wainwright*, 725 F.2d 1511, 1523 (11th Cir. 1984).  Still, the record would rarely explain that counsel — despite actual recognition — chose not to raise an objection because it was meritless.

¶ 20    An appellate court could infer such a conscious choice only by examining the evidence and concluding that any objection would not have had any obvious purpose.  Because at that point the waiver inquiry would be the converse of the plain error inquiry

mandated by *Rediger II*, ¶ 48 ("An error is plain if it is obvious . . . ."), we discern no judicial economy in undertaking it.

¶ 21 Turning to the fifth explanation, the record could support the inference of a strategic calculation to benefit the defense based on defense counsel's later use of the evidence. *See United States v. Smith*, 531 F.3d 1261, 1267 (10th Cir. 2008) (finding waiver where counsel not only represented that he had no objection to the admission of certain evidence but also relied on the evidence); *People v. Bondsteel,* 2015 COA 165, ¶ 130 ("We decline to review the [DNA] match statements for plain error because . . . the record creates a strong inference that defense counsel did not object to these statements as a matter of strategy rather than due to inadvertence.") (*cert. granted* Oct. 31, 2016). But here, defense counsel did not seek to obtain any benefits from the firearms. Nor, for that matter, do we see how counsel could have done so.

¶ 22 Finally, as to the sixth explanation, the possibility that defense counsel did not object "because [counsel] perceives some slightly expanded chance to argue for 'plain error' *later*," *Henderson v. United States,* 568 U.S. 266, 276 (2013) (emphasis in original), is most troublesome yet hardest to discern. True, "plain error review

provides a strategic hedge against potentially risky litigation decisions, and encourages defense counsel not to object to inadmissible evidence — at least at the margins." *United States v. Smith,* 459 F.3d 1276, 1302-03 (11th Cir. 2006) (Tjoflat, J., specially concurring). But despite extensive recognition by both state and federal courts of the sandbagging problem, we have not found a test for detecting it as a basis for finding a waiver.

¶ 23 Of course, an appellate court would be justifiably suspicious of sandbagging if the objection was obviously meritorious, admission of the evidence would clearly prejudice the defendant, and defense counsel was experienced. But because "appellate courts are poorly situated to discern litigation strategy," *id.*, drawing the sandbagging inference on direct appeal would be speculative.[2] And in any event, the "limited scope of [plain error] review discourages a defense counsel from sandbagging a district judge by holding in his pocket a legal argument." *United States v.*

---

[2] "Only after a hearing in which evidence was offered could this Court have known why the appellant's counsel failed to object. Perhaps counsel had a certain strategy in mind. Perhaps counsel was sandbagging the State. Perhaps counsel was seeking an advantage on direct appeal." *State v. Bolen,* 632 S.E.2d 922, 930 (W. Va. 2006) (Maynard, J., dissenting).

*Redrick*, 841 F.3d 478, 481 (D.C. Cir. 2016).  As well, in the heat of battle, even the best lawyers simply make mistakes.  *See People v. Weathers*, 338 N.E.2d 880, 883 (Ill. 1975).  For these reasons, we cannot conclude that defense counsel said "no objection" — not once but three times — to feather defendant's appellate nest.

¶ 24     As the special concurrence ably points out, the waiver question is by no means free of doubt.  In the view of some courts, "[t]hough a party's failure to object usually results in a forfeiture subject to plain-error review, when the 'subject matter [is] unmistakably on the table, and the defense's silence is reasonably understood only as signifying agreement that there was nothing objectionable,' the issue is waived on appeal."  *United States v. Soto*, 799 F.3d 68, 96 (1st Cir. 2015) (quoting *United States v. Christi*, 682 F.3d 138, 142 (1st Cir. 2012)).

¶ 25     But a closer look at some such cases shows that defense counsel had earlier recognized the possible need for an objection.  *See United States v. Comstock*, 531 F.3d 667, 675 (8th Cir. 2008) ("[T]his Court has 'found pretrial objections waived when an appellant's counsel *affirmatively stated* "no objection" at trial to the admission of evidence previously sought to be suppressed.'"

(quoting *United States v. Gonzalez-Rodriguez*, 239 F.3d 948, 951 (8th Cir. 2001))); *United States v. Cunningham*, 405 F.3d 497, 502 (7th Cir. 2005) ("Although Cunningham's trial counsel initially objected to admission of the pictures, he later explicitly withdrew his objection and furthermore failed to make any additional objections in the proceedings below to their admission.").  We decline to take this path based on defense counsel's voir dire questions about prospective jurors' attitudes toward firearms. Asking such general questions would be prudent in any POWPO case, rather than only in those cases where prejudice somehow inheres in the particular firearms at issue.

¶ 26    Actual recognition seems to be what *Rediger II* requires to find a waiver.  And recognition is the third step that we posit separates *Rediger II* from *Stackhouse*.  We will assume defense counsel's general familiarity with the prejudice limitation in CRE 403 and counsel's awareness that if admitted, the firearms would be there for the jurors to see.  But the third step — actual recognition that the firearms might create prejudice subject to CRE 403 scrutiny — poses the inadvertence or intentional relinquishment dilemma.  *See*

13

*People v. Foster*, 2013 COA 85, ¶ 38 (listing "several imponderables" inherent in attempting to make such an assessment).

¶ 27    In the end, "[t]he line between waiver and forfeiture is often blurry." *United States v. Garcia,* 580 F.3d 528, 541 (7th Cir. 2009). Because "[t]he distinction is not always easy to make," and here defense counsel declined to explain the decision not to object, "our task is to use conjecture as to whether the defendant's failure to object was accidental or deliberate, and to do so, we evaluate the record as a whole." *Id.* at 541-42.  Simply put, this record does not foreclose the possibility that defense counsel overlooked the possible prejudice from having the firearms present in the courtroom.

¶ 28    For these reasons, we decline the Attorney General's invitation to read *Rediger II* narrowly on a record no more favorable to the prosecution than the record in that case.  After all, in *Rediger II* defense counsel told the court more than once that he was reading the prosecutor's tendered instructions.  With respect for the views expressed in the special concurrence, we leave to the supreme court excluding from the heightened waiver scrutiny in *Rediger II* evidentiary issues that lack constitutional significance as well as

reconciling any discrepancy between *Rediger II* and *Stackhouse*.

*See Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.").

¶ 29    So, we reject waiver and take up plain error analysis.

### B.  Standard of Review and Law

¶ 30    Ordinarily, we review the district court's evidentiary rulings for an abuse of discretion. *People v. Faussett*, 2016 COA 94M, ¶ 33. However, if defense counsel failed to object to the admission of evidence, we reverse only if the admission of the evidence went beyond an abuse of discretion and rose to the level of plain error. *Hagos v. People*, 2012 CO 63, ¶ 14.  An error is plain where it is obvious and substantial, and casts serious doubt on "the basic fairness of the trial itself" and "the reliability of the judgment of conviction."  *Wilson v. People*, 743 P.2d 415, 419-20 (Colo. 1987).

¶ 31    "Because the balance required by CRE 403 favors admission, a reviewing court must afford the evidence the maximum probative

15

value attributable by a reasonable fact finder and the minimum unfair prejudice to be reasonably expected." *People v. Folsom*, 2017 COA 146M, ¶ 33 (quoting *People v. Elmarr*, 2015 CO 53, ¶ 44). "Consistent with this preference for admission, evidence is not unfairly prejudicial merely because it damages the defendant's case." *People v. Valdez*, 2017 COA 41, ¶ 37. And evidence is unfairly prejudicial only if it has an "undue tendency to suggest a decision on an improper basis, commonly but not necessarily an emotional one, such as sympathy, hatred, contempt, retribution, or horror." *People v. Dist. Court*, 785 P.2d 141, 147 (Colo. 1990).

## C. Analysis

¶ 32    Defendant argues that because "[s]howing someone a gun, a [AR 15] style rifle for that matter, evokes a very different response than a picture, or even showing them a scope or other item," admission of the firearms — in addition to the photographs — was plain error. The three firearms were an AR 15 rifle,[3] a 9mm high-point assault rifle, and a 12-gauge shotgun.

---

[3] "An 'AR 15 is the civilian version of the military's M4 carbine. Contrary to what most people believe AR doesn't stand for assault rifle, rather it stands for the original manufacturer Armalite Rifle. AR 15 is semiautomatic and doesn't meet Federal requirements to

¶ 33    As to prejudice, defendant cites no legal authority, nor have we

found any in Colorado, holding that admission of firearms

connected to a crime is unduly prejudicial. *Cf. People v. Watson*,

650 P.2d 1340, 1343 (Colo. App. 1982) ("As for the revolvers, it has

been consistently held that weapons found during a search are

admissible as a part of the history of the arrest . . . ."). Defendant

does not suggest how the nature of these three firearms was

somehow particularly likely to evoke prejudice. Nor does he point

to any testimony concerning their capabilities that might have done

so.

¶ 34    Still, a closer look shows that at least one court has expressed

concern about juror attitudes about firearms:

> Personal reactions to the ownership of guns
> vary greatly. Many individuals view guns with
> great abhorrence and fear. Still others may
> consider certain weapons as acceptable but
> others as "dangerous." A third type may react
> solely to the fact that someone who has
> committed a crime has such weapons. Any or
> all of these individuals might believe that

---

be classified as an assault rifle." *State v. Schroeder*, No. 16-1786, 2018 WL 2230542, at *2 n.2 (Iowa Ct. App. May 16, 2018) (unpublished table decision) (quoting *AR 15*, Urban Dictionary, https://www.urbandictionary.com/define.php?term=AR%2015 (last visited Apr. 24, 2018)).

> defendant was a dangerous individual . . . just
> because he owned guns.

*State v. Rupe*, 683 P.2d 571, 597 (Wash. 1984).  Concern has also

arisen from the number of firearms involved:

> Two dozen guns in a courtroom is undoubtedly
> an alarming sight.  The prosecutor's repeated
> assurances that the weapons were not loaded
> and that all were examined multiple times to
> verify that they were secure demonstrated an
> awareness that jurors would be apprehensive
> in the presence of this much weaponry.

*United States v. Klebig*, 600 F.3d 700, 715 (7th Cir. 2009).

¶ 35     Unlike in *Klebig*, here only three firearms were admitted.  Still,

somewhat like in that case, the trial court wondered aloud what

should be done with those three firearms, after they had been

admitted:

> The Court now directs that the weapons be
> taken somewhere and locked up.  The Court
> doesn't anticipate bringing them back and
> giving them to the jury to deliberate because
> the Court sees no evidentiary purpose to that.

Although some questions about attitudes toward firearms were

asked during voir dire, the responses from the seated jurors afford

little insight into all of their attitudes.  So, recognizing at least some

possibility of prejudice, the balancing process must turn to probative value.

¶ 36    Directly contrary to defendant's argument, "[r]eal evidence is relevant and therefore admissible if it is connected in some manner with either the accused, the victim, or the crime." *People v. Garcia*, 784 P.2d 823, 826 (Colo. App. 1989). In other words, "[e]vidence that defendant may have possessed an instrument which could have been used in the commission of the crime is admissible, provided a proper foundation is laid." *Id.*; *see also United States v. Moreno*, 933 F.2d 362, 375 (6th Cir. 1991) ("[T]he probative value of the presence of the actual firearms in the courtroom was not 'substantially outweighed by the danger of unfair prejudice' . . . ." (quoting Fed. R. Evid. 403)); *United States v. Wiener*, 534 F.2d 15, 18 (2d Cir. 1976) ("We hold that the gun was relevant to the issues upon which Wiener was tried and that the court did not abuse its discretion in holding that its probative weight was not overbalanced by the inflammatory tendency of the gun as evidence.") (collecting cases).

¶ 37    These authorities have particular weight in this case because the firearms were the instrumentality whereby defendant committed

POWPO.  *See State v. Solomon*, 91 A.3d 523, 528 (Conn. App. Ct. 2014) ("[T]he revolver was relevant to show that the defendant possessed the means to commit the crime of criminal possession of a firearm," and its admission "cannot be considered unduly prejudicial . . . when offered for this limited purpose because mere possession of the means to commit a crime, without more, does not establish that the defendant had bad character or a propensity for violence.").  Likewise, in *Moreno*, 933 F.2d at 375, "[t]he probative value of the firearms is clear, since they are the basis for Count 13 of the indictment."  In contrast, the numerous firearms admitted in *Klebig* were offered only to show that because the defendant owned so many lawful firearms, his mistake defense to having purchased an unlawful gun lacked credibility.

¶ 38     True, the three firearms were accurately described in the photographs admitted into evidence.  But defense counsel did not propose any stipulation concerning the firearms, in lieu of their admission.  And even had counsel done so, "[t]he prosecution is generally entitled to prove the elements of its case against a defendant by evidence of its own choice." *People v. Morales*, 2012 COA 2, ¶ 9.

20

¶ 39    For these reasons, we discern no error, and therefore do not proceed further along the plain error path, in admitting the firearms as the instrumentality of the crime.

### III.  Admission of the Detective's Testimony About Statements of M.S. Does Not Warrant Reversal

¶ 40    After M.S. testified as a prosecution witness, the prosecutor called the detective who had interviewed him about the burglary, Sergeant Vidmar.  When the sergeant began to recount M.S.'s statements during that interview, defense counsel objected based on "[h]earsay, improper impeachment."  The trial court allowed the sergeant to continue.

¶ 41    Later, defense counsel renewed the objection.  After hearing argument outside the jury's presence, the court ruled that the sergeant could testify as to whether M.S. had "changed his story" and "if the interview led this witness to do something else, like drive [the burglar] around to a location."  However, "just to have this witness say that [the burglar] told him the same thing [the burglar] told the jury yesterday, is just bolstering the testimony, which is generally not allowed."

¶ 42 Defense counsel did not ask that the prior testimony be stricken or request a cautionary instruction; nor, when the jury returned, did the court give one sua sponte. Direct examination resumed. The sergeant was asked only whether M.S. had changed his story — the answer was "no" — and to explain how the interview had led the officers to the apartment where the firearms were seized, which he did, albeit briefly.

## A. Standard of Review and Law

¶ 43 A trial court has substantial discretion in deciding questions concerning the admissibility of evidence. *People v. Elie*, 148 P.3d 359, 362 (Colo. App. 2006). Where the issue is preserved, we reverse a trial court's evidentiary ruling only if the trial court abused that discretion and the error is not harmless. *Id.* A trial court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or when it is based on an erroneous understanding or application of the law. *People v. Jackson*, 2018 COA 79, ¶ 37.

¶ 44 On the one hand, "out-of-court statements cannot be used to bolster the trial testimony of witnesses." *People v. Johnson*, 987 P.2d 855, 860 (Colo. App. 1998). On the other, "a witness's prior

consistent statements are admissible under two distinct theories." *People v. Clark*, 2015 COA 44, ¶ 124. They may be admitted under CRE 801(d)(1)(B) as substantive evidence or, as pertinent here, they are sometimes admissible outside of the rule to rehabilitate a witness's credibility. *People v. Eppens*, 979 P.2d 14, 19-21 (Colo. 1999).

¶ 45 When a witness's credibility has been attacked, how much of a prior consistent statement is admissible turns on the scope of the attack. *Elie*, 148 P.3d at 362. If the witness's testimony is attacked based on specific facts, only prior consistent statements regarding those facts are admissible. *People v. Miranda*, 2014 COA 102, ¶ 16. But where the attack is more general, the jury may hear all relevant facts, including consistent and inconsistent statements. *Id.*

## B. Analysis

¶ 46 Defendant argues that "[n]ot only were [the sergeant's] statements not admissible under the rules of evidence, but they tended to improperly bolster the credibility of M.S.'s prior testimony."

¶ 47 But at trial, defense counsel generally attacked M.S.'s credibility. For example, during opening statement counsel said,

"You will hear that [M.S.] has not always told the same version of events when he talks about what happened . . . ." Then, in cross-examining M.S., counsel elicited details about inconsistencies among M.S.'s statements. Thus, the sergeant's later testimony about what M.S. had told him during the interview was "relevant and admissible to give the jury a complete picture of [M.S.'s] credibility." *Miranda*, ¶ 20 (quoting *People v. Banks*, 2012 COA 157, ¶ 39).

¶ 48 Further, the trial court sustained defendant's objection to the sergeant's more general statements about what M.S. had said during the interview, limiting the testimony to "whether M.S. "change[d] his story in any significant detail." We discern no risk of bolstering from this limited testimony.

¶ 49 And to the extent defendant now argues the trial court should have given a curative instruction as to the initial statements, he did not request one. *See People v. Mersman*, 148 P.3d 199, 203 (Colo. App. 2006) ("[T]o receive a curative instruction, a defendant must request it, and a trial court does not commit plain error if it does not give a curative instruction sua sponte.").

## IV. The Prosecutor's Statements in Closing Argument Do Not Constitute Plain Error Warranting Reversal

### A. Standard of Review and Law

¶ 50    Defendant points to several statements by the prosecutor that he argues either mischaracterized the evidence or misstated the law. Defendant concedes that because trial counsel did not object to these statements, we review only for plain error.

¶ 51    To warrant reversal under plain error, prosecutorial misconduct must be flagrant or glaringly or tremendously improper and so undermine "the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction." *People v. Strock,* 252 P.3d 1148, 1152 (Colo. App. 2010) (citation omitted). Prosecutorial misconduct in closing argument rarely constitutes plain error. *People v. Carter,* 2015 COA 24M-2, ¶ 53.

¶ 52    We evaluate claims of improper argument in the context of the argument as a whole and in light of the evidence before the jury. *People v. Samson,* 2012 COA 167, ¶ 29. Prosecutors may employ rhetorical devices and engage in oratorical embellishment and metaphorical nuance. *People v. Conyac,* 2014 COA 8M, ¶ 132. Prosecutors also have considerable latitude in replying to opposing

counsel's arguments and in making arguments based on facts in evidence and reasonable inferences that can be drawn from those facts. *Id.* at ¶ 133. As well, "because arguments delivered in the heat of trial are not always perfectly scripted, reviewing courts accord prosecutors the benefit of doubt where remarks are 'ambiguous,' or simply 'inartful.'" *People v. McBride*, 228 P.3d 216, 221 (Colo. App. 2009) (citations omitted).

¶ 53 Even so, prosecutors may not use closing argument to misstate the evidence, assert a personal opinion, or insert claims calculated to inflame the passions and prejudices of the jury. *Samson*, ¶ 32. In other words, a prosecutor is "free to strike hard blows, [but] 'is not at liberty to strike foul ones.'" *Wilson*, 743 P.2d at 418 (quoting *Berger v. United States*, 295 U.S. 78, 88 (1935)).

### B. Analysis

#### 1. Defendant's Statements to Lieutenant Coates

¶ 54 Lieutenant Coates testified on direct examination that defendant had told him during the interview that at the Fountain Mesa Road house, M.S. asked defendant "if he would hold onto some bags for him." Defendant had explained that firearms "were located inside green duffel bags" and "some of them were wrapped

26

up in a blanket." M.S. did not give defendant the firearms at the Fountain Mesa address; rather, M.S. met up with defendant later at the Arvada street address.

¶ 55     During cross-examination, the lieutenant clarified that defendant "never stated M.S. showed up with guns. He said that [M.S.] showed up with green duffel bags." And defendant had told the lieutenant that he did not look into the bags or ask what was in them.

¶ 56     During closing argument, the prosecutor said:

- "We have [defendant] himself stating that M.S. shows up . . . and says . . . [h]ere is the duffel bag and a blanket and a bunch of heavy stuff there. Will you hold it for me."

- "[Defendant] testifies that later that evening at the Arvada address M.S. shows up with those guns wrapped in a blanket. And the bags, he takes them and he puts them into . . . [a] room."

¶ 57     Although defendant points to slight discrepancies between the lieutenant's testimony and the prosecutor's closing argument, none of them rises to the level of plain error. *See People v. Arzabala,* 2012 COA 99, ¶¶ 68-72 (no plain error if the misstatements did not

contribute to the defendant's conviction and the jury heard accurate testimony). Further, based on what defendant said had occurred at both the Fountain Mesa and Arvada locations, the prosecutor's statements were reasonable evidentiary inferences.

### 2. Sergeant Racine's Testimony

¶ 58 Sergeant Racine testified that during the search of the Arvada apartment, "the two assault weapons were located in an unclosed closet in the left-hand bedroom. And the shotgun was located in a closet in the living room."

¶ 59 During closing argument, the prosecutor said:

> When they conduct the search they find assault rifles and the shotgun in the attic. Not locked up in a safe. Not even wrapped up in blankets or some duffle bags but exposed in the open. One of the bedrooms that [defendant] himself says he put them. But now they are open. And a shotgun in the living room.

¶ 60 While the reference to the attic was incorrect, the rest of the statements were based on reasonable evidentiary inferences. Specifically, the sergeant testified that, as to the firearms, "you could kind of make out there was barrels because there was an attempt to like cover them up . . . [but] portions of the gun [were]

28

exposed." And reference to an attic — instead of an open closet — is not a material difference.

### 3. M.S. Testimony

¶ 61     Defendant points to the following statements by the prosecutor as mischaracterizing M.S.'s testimony:

- M.S. saw "*at least* five weapons" in the car, whereas he testified that "*at most* there were five guns" (emphasis added);

- M.S. gave police "two addresses" as possible locations for the stolen firearms, whereas he "only provided the address at Arvada apartment";

- M.S. saw the firearms in the car "the next day," whereas he testified he saw them "on September 24."

¶ 62     But "divisions of this court have often overlooked minor discrepancies between the evidence and closing argument." *Bondsteel*, ¶ 138; *see also People v. Williams*, 996 P.2d 237, 245 (Colo. App. 1999) (prosecutor's statement that forty dollars was found in the defendant's pocket, while there was no testimony establishing the exact amount, was not "so prejudicial when considered in the context of the entire closing argument as to constitute plain error").

### 4. Knowing Possession of a Firearm

¶ 63     The trial court instructed the jury:

> "POSSESSION" as used in these instructions, does not necessarily mean ownership, but does mean the actual, physical possession, or the immediate and knowing dominion or control over the object or the thing allegedly possessed. "Possession" need not be exclusive, provided that each possessor, should there be more than one, actually knew of the presence of the object, or thing possessed and exercised actual physical control or immediate, knowing dominion or control over it.

Defendant argues that, contrary to this instruction, the prosecutor "made numerous erroneous statements regarding the knowing possession of a firearm" that allowed the jury to convict him "if, at any time, the jury could determine that [he] was in the Arvada apartment at the same time of [sic] the guns."

¶ 64     For example, the prosecutor told the jury:

- "I don't have to prove that he owned the gun. I don't have to prove that he possessed it exclusive of everyone else. Everybody in the room with that shotgun, under this definition for this crime is possessing that firearm."

- "Possession also need not be exclusive. Provided that each possessor, should there be more, actually knew of the presence of the object."

- "If he knew it was there, he is guilty."

- "If he walked into a room, he sees a shotgun in the closet, he has a duty, as a convicted felon, to leave the room."

¶ 65     True, "'possession,' as it is used in [POWPO], is the actual or physical control of the firearm." *Beckett v. People*, 800 P.2d 74, 82 (Colo. 1990) (quoting *People v. Garcia*, 197 Colo. 550, 554, 595 P.2d 228, 231 (1979)). Thus, some of the prosecutor's statements — i.e., "If he knew it was there, he is guilty" — when read in isolation, do not accurately state the law.

¶ 66     Still, a defendant need not have had exclusive control of the firearm to be found guilty of possessing it. *See People v. Tramaglino*, 791 P.2d 1171, 1172-73 (Colo. App. 1989) (evidence was sufficient to support POWPO conviction where eyewitness testified that she saw the gun in the defendant's possession and police officers later discovered the gun in his automobile); *People v. Rivera*, 765 P.2d 624, 626-28 (Colo. App. 1988) (evidence was sufficient to support the defendant's POWPO conviction where he

31

accompanied his wife and assisted her with the purchase of a revolver, which was within "arm's reach" of defendant), *rev'd on other grounds*, 792 P.2d 786 (Colo. 1990).

¶ 67    In this regard, the prosecutor also told the jury:

- "Possession, as used in these instructions, does not necessarily mean ownership, but does mean actual physical possession or the immediate and knowing dominion or control over an object or thing allegedly possessed."

- "[I]f [defendant] knew that those were firearms, and he was where he could exercise control or dominion over them, he was in possession."

- "It can't be a hot potato."

And the prosecutor mentioned the trial court's instruction on possession.

¶ 68    Given the prosecutor's correct statements on possession and the reference to the trial court's instruction, we conclude that any misstatements do not constitute plain error.  *See Strock*, 252 P.3d at 1154 (no plain error where misstatements were offset by the prosecutor's correct statements of law, the trial court's correct instructions, and counsel's reference to the court's instructions

during closing); *see also People v. Kyle*, 111 P.3d 491, 502 (Colo. App. 2004) ("Even assuming the comment was improper, in light of the trial court's instructions and the other proper argument by the prosecutor, we cannot say with fair assurance that any error so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction.").

¶ 69    In any event, misstatements by the prosecutor were few in number in an otherwise lengthy summation. *See People v. Villa*, 240 P.3d 343, 357 (Colo. App. 2009) ("We note that the number of times the jury is confronted with a misstatement of law is relevant in evaluating the nature and extent of the harm. . . . Furthermore, the trial court's instructions to the jury were clear . . . ."). And when read in conjunction with the prosecutor's other statements, any error would not have been flagrant or glaring. *See People v. Weinreich*, 98 P.3d 920, 924 (Colo. App. 2004) ("This argument, taken in context, is not a misstatement of the law."), *aff'd*, 119 P.3d 1073 (Colo. 2005).

## V. Cumulative Error

¶ 70    Lastly, defendant contends the aggregate impact of numerous errors denied his right to a fair trial. But the doctrine of cumulative

error requires that numerous errors be committed, not merely alleged. *People v. Jones*, 665 P.2d 127 (Colo. App. 1982), *aff'd sub nom. People v. Curtis*, 681 P.2d 504 (Colo. 1984).

¶ 71    We have found only unpreserved errors that were not plain. Whether plain errors can even be considered for cumulative error purposes has not been resolved in Colorado. *Compare United States v. Nunez*, 532 F.3d 645, 655 (7th Cir. 2008) ("When an appellant alleges cumulative error, this Court will only consider plain errors and errors which were preserved for appellate review."), *with United States v. Delgado*, 672 F.3d 320, 340 (5th Cir. 2012) ("[P]lain-error analysis under [Fed. R. Crim. P.] 52(b) prohibits us from basing a reversal on unpreserved errors that are not 'plain' under the second prong of plain-error review.").

¶ 72    Be that as it may, we cannot discern how any combination of the possible but unpreserved errors in the prosecutor's closing argument — which were not plain — could have deprived defendant of a fair trial. *See Carter*, ¶ 81.

## VI.  Conclusion

¶ 73    The judgment is affirmed.

JUDGE FOX concurs.

34

JUDGE NIETO specially concurs.

JUDGE NIETO, specially concurring.

¶ 74 Although I concur with the majority's ultimate result, I would conclude that defendant's trial counsel waived any error regarding the admission of the firearms into evidence, and would therefore decline to review his contention.

¶ 75 Our supreme court has helpfully distinguished between waiver and forfeiture in *People v. Rediger*, 2018 CO 32. Waiver requires "*intentional* relinquishment of a *known* right," *id.* at ¶ 39 (quoting *Dep't of Health v. Donahue*, 690 P.2d 243, 247 (Colo. 1984)), and therefore does not involve errors resulting merely from oversight. Moreover, such "intentional relinquishments" are not limited to explicit acts, but may even include mere implications, if they clearly manifest an intent to relinquish the issue. *Id.* at ¶ 42; *see also Horton v. Suthers*, 43 P.3d 611, 619 (Colo. 2002) (collecting cases); *Hansen v. State Farm Mut. Auto. Ins. Co.*, 957 P.2d 1380, 1385 (Colo. 1998) (where defense failed to offer replacement jury instruction after trial court rejected its first tendered instruction, it waived issue). If a contention has been waived, appellate courts will not review it even for plain error. *Rediger*, ¶ 34.

¶ 76    By contrast, courts may still review an issue for plain error when a litigant inadvertently relinquished it below through apparent "oversight," because in that case the issue was merely "forfeited." *Id.* at ¶¶ 37, 40. Thus appellate courts will not find waiver where, for example, the record "bears no indication" that a defendant was aware at trial of a potential problem with the jury instructions. *Id.* at ¶¶ 37-38.

¶ 77    We are thus faced with the question of whether defendant intentionally relinquished his right to appeal the issue of whether the guns should have been shown to the jury, or instead merely overlooked this possibility. In the context of the aforementioned precedent, I would conclude that defendant waived the issue.

¶ 78    The record makes plain that defendant's trial counsel was pointedly confronted with the possibility that the guns would be shown to the jury and expressly declined to register an objection.[1] This knowing and express acquiescence is not analogous to the situation in *Rediger,* where the supreme court saw "no evidence,

---

[1] Although *Horton v. Suthers,* 43 P.3d 611, 619 n.9 (Colo. 2002), noted that it should not be read as applying invited error to a mere "failure to object," here defendant's express statement of "no objection" to admitting the guns goes further than a mere "failure" and constitutes an "affirmative[] acquiesce[nce]." *Id.*

either express or implied" that the litigant's counsel was even aware of the potential problem. *Id.* at ¶ 42. Here, the firearms were physically present before counsel and the appearance of the weapons was obvious. In voir dire, counsel questioned several prospective jurors concerning their attitudes about firearms, showing that he was aware of the potential for prejudice. Therefore, I would conclude that counsel was aware of the issue and waived any CRE 403 objection he might have raised.

¶ 79     Because waiver is a harsh remedy, our supreme court has further clarified that it is less likely to perceive waiver when the abandoned issue involves constitutional rights. *People v. Curtis*, 681 P.2d 504, 514 (Colo. 1984) (courts do not presume waiver of fundamental constitutional rights). Here, unlike in *Curtis* and *Rediger*, there are no constitutional rights in issue. Rather, the issue involves the admission of admittedly relevant evidence that defendant might have argued was unfairly prejudicial under CRE 403. Therefore, the effect of a waiver here was of more modest consequence.

¶ 80     *Hansen*, 957 P.2d at 1385, is more analogous to the situation here. There, after the trial court rejected the defendant's tendered

jury instruction, it offered the defendant a chance to redraft it. The defendant declined to redraft the instruction, and our supreme court held that this declination constituted invited error. Similarly, here, defendant's trial counsel was fully aware that the guns would be shown to the jury, and nevertheless expressly declined to object.

¶ 81 Accordingly, I would hold that defendant waived his CRE 403 objection to admission of the firearms, and would decline to review his contention.